53 So.2d 786

**TEXAS CO. v. LEACH et al.**

No. 39682.

June 29, 1951.

Pyburn & Pyburn, Shreveport, for defendants-appellants.

Marion J. Epley, Jr., D. Douglas Howard, New Orleans, and Colvin & Hunter, Mansfield, for appellee.

LE BLANC, Justice.

This is a concursus proceeding filed by plaintiff, on August 28, 1948, under the provisions of Act 123 of 1922 which is now incorporated in the Revised Statutes of 1950, as LSA–R.S. 13 :4811.

Plaintiff avers that it is now, and has been since July 26, 1916, producing oil in paying quantities from lands described as Lot 4 of Section 25, Township 13 North, Range 12 West, situated in the Parish of De Soto, Louisiana, under and by virtue of an oil, gas and mineral lease dated May 16, 1913, granted by the then record owners of said property, the said lease having been transferred to it by the Producers Oil Company, the original lessee, on November 13, 1918.

Plaintiff next avers that on September 5, 1945, Eugene A. Nabors, Mrs. Sarah Nabors Mullins, Mrs. Margaret Nabors Peckham, Miss Birdie Louise Nabors and Wilfred A. Nabors, hereafter referred to as Eugene A. Nabors, et als., as First Party, and William C. Nabors, as Second Party, entered into an agreement whereby and whereunder the title of the First Party to fee and minerals of Lot 4 of Section 25, Township 13 North, Range 12 West, was recognized by Second Party, and in return, the First Party recognized the one-sixteenth (1/16) royalty interest of Second Party in production from said Lot 4.

Plaintiff then alleges that on July 12, 1948, it was notified that Eugene A. Nabors, et als. were claiming the one-sixteenth royalty interest of William C. Nabors under the aforementioned agreement of September 5, 1945, and that said claimants were

thereby demanding that the said one-sixteenth royalty be paid to them; that William C. Nabors on July 30, 1948, denied there was a loss of such royalty interest by him or his transferee, Mrs. Parie N. Leach, and demanded that the payment of such royalty be paid to his said transferee.

Plaintiff finally avers that it desires to deposit into the registry of the court the amount now accrued from such one-sixteenth royalty interest, in the sum of $107.-20, and the amounts hereafter to be continuously accruing, until such time as the ownership of such amounts shall be determined, under the provisions of Act 123 of 1922.[1]

The prayer of plaintiff's petition is that it be permitted to deposit the sum of $107.20 and such additional funds as will accrue from month to month as royalties from production of oil from the lease, into the registry of the court, and that all adverse claimants be cited to appear and make their respective claims thereto. The order for deposit was granted, all parties were properly cited and filed answers. Eugene A. Nabors, et als., filed their answer on March 24, 1949 in which they allege that the original oil, gas and mineral lease of 1913 was amended by the parties on January 20, 1941 by a compromise agreement which provided for the termination of the lease upon failure to commence re-working operations within 60 days after cessation of production and that because of plaintiff's failure to comply with the terms of this agreement, the lease terminated during the latter part of August, 1947.

They further allege that even if the court should hold against them on this point, they nevertheless, are entitled to the whole of the one-eighth royalty (which includes the one-sixteenth deposited in the registry of the court) because under the partition agreement between W. C. Nabors and Eugene A. Nabors, et als., W. C. Nabors' interest was to last only so long as "such production continues" and they allege that such production did not continue during the period of the shutdown of the well for re-working operations.

On April 4, 1949, W. C. Nabors filed an answer in which he alleged that he was not seeking any part of the royalty deposited in the court; that he disclaimed any right or interest in the same and prayed that he be discharged from further answering.

On the same day, April 4, 1949, Mrs. Parie N. Leach, wife of George T. Leach, the other party cited, filed her answer in which she alleged that she was the transferee of W. C. Nabors and that she owned all interest formerly held by him; that such interest was conveyed to her on July 12, 1948; that she is entitled to one-half of

1. It appears from the record that the value of the lease and the amount involved in this proceeding exceeds $2000.- 00. Therefore appellate jurisdiction is vested in this court.

the royalty due from the production of the wells in question and prayed for judgment accordingly.

On April 23, 1949, Eugene A. Nabors, et als. filed a motion for a writ of subpoena duces tecum in which they requested that the Texas Company produce certain correspondence, papers and records relating to the dates of the cessation of production from well No. 12 and also relating to the date of the pulling of tubing from said well and to the date of entry of the Hollandsworth Drilling Company upon the said Lot 4 for the re-working operations. The writ was complied with by the Texas Company, on May 3, 1949.

On the same day, May 3, 1949, plaintiff filed a plea of estoppel, in which it alleged that defendants, Eugene A. Nabors, et als. are estopped from contending that the lease was terminated because after its alleged termination in August 1947, they remained silent and never declared the lease to be terminated, but rather had allowed plaintiff to equip, drill and re-work two oil wells on the property, known as Grand Bayou Planting Company wells No. 6 and 12, at a cost to plaintiff in excess of $35,000.00; that defendant had full knowledge of such operations being conducted, but nevertheless gave no notice of default until long after both wells were completed and producing; that defendants received and accepted monthly royalty checks for the months of February 1948 through September 1948, without protest or notice of default and retained said checks until October 8, 1948; that the above silence and failure to protest on the part of the defendants caused plaintiff to pursue a course of action to its detriment that it would not have followed otherwise if said defendants had given notice of default, or otherwise protested the said operations when same were being conducted.

At the same time, plaintiff filed an alternative plea in which it averred that if the Court should find that the lease has terminated then plaintiff should be entitled to recover from defendants, Eugene A. Nabors, et als., the full cost of equipping, drilling, re-working, and any other operating or production costs incurred in connection with the drilling or re-working or operation of the wells after the termination of said lease, inasmuch as plaintiff entered the property covered by said lease in good faith and in the belief that the lease was in full force and effect, and equipped, drilled, re-worked and operated said wells at a cost as of March 31, 1949 of $53,511.13 which is subject to the credit of $21,969.82 to be applied out of the value of production saved by plaintiff.

On the pleadings as thus presented and after trial on the merits, judgment was rendered in the lower court in favor of the plaintiff, rejecting the demands of the defendants, Eugene A. Nabors, et als., and decreeing that the deposit had been validly made by plaintiff, relieving it from all liability in connection therewith and relieving it from all costs. The judgment further

decreed that Mrs. Leach was entitled to receive the fund deposited in the registry of the court, after paying the costs involved in the suit. The demands of defendants, Eugene A. Nabors, et als. against the defendant, Mrs. Parie N. Leach, were rejected and disallowed and Mrs. Leach was reserved the right to recover against them all costs which may be paid out of the fund on deposit in the registry of the court. The trial judge did not assign written reasons for judgment and we have no way of knowing whether it was based on the plea of estoppel or resulted from the trial on the merits.

From the said judgment, Eugene A. Nabors, et als. appealed suspensively and devolutively to this court.

A short history of the subject lease and a brief resume of the facts involved in this litigation may prove beneficial in our discussion and disposition of the issues presented.

In 1913 when the original lease of May 16 of that year was granted to Producers Oil Company, Eugene A. Nabors and his brother and sisters, from whom he now holds a power of attorney, were all minors. Their father, E. A. Nabors, had died and their mother was qualified as their tutrix. They, with J. M. Nabors, W. N. Nabors, J. B. Nabors and a corporation designated as Grand Bayou Planting Company, held the fee title to some 907 acres of land in De Soto Parish. The lease to Producers Oil Company covered the entire acreage and was the usual commercial type of mineral lease carrying, besides a cash, and other considerations, the consideration of a one-eighth royalty of the oil to be produced and saved from the premises leased. On Lot No. 4 in Section 25, Township 13 North, Range 12 West, a portion of the land under lease, the lessee drilled a well which produced oil in paying quantities on July 26, 1916. On November 13, 1918, Producers Oil Company transferred its lease to the Texas Oil Company which continued to operate it, producing oil from two wells known as Grand Bayou Planting Company wells Nos. 6 and 12.

Eventually it would seem, title to and ownership of the properties were changed for it appears from an agreement of compromise entered into with the Texas Company on January 20, 1941, that Eugene A. Nabors and his brother and sisters were the recognized owners, in indivision, of certain portions of the lands originally leased, including an undivided one-half interest in Lots 1 and 4 in Section 25, Township 13 North, Range 12 West and W. C. Nabors was the recognized owner also of an undivided half interest in said lots. The said compromise agreement was to settle and adjust and put to an end certain litigation then pending in the United States District Court for the Western District of Louisiana, between E. A. Nabors and his co-heirs and the Texas Company. By the terms of the agreement, the original lease of May 16, 1913 was amended and reformed so as to

exclude from its contents all of the lands originally described therein save and except Lot 4 in Section 25, Township 13 North, Range 12 West. That lot was held and was to be retained by the Texas Company, together with the two producing wells on it, subject to the terms of the original lease so long as oil or gas is produced from one or both of the two producing wells. The clause to that effect is followed by this proviso which forms the basis of one of the demands of E. A. Nabors, that against the Texas Company in this proceeding: " * * * provided, however that should the production of oil or gas cease from any cause, the said lease shall not be terminated thereby if said The Texas Company, lessee, commences drilling or re-working operations within sixty (60) days thereafter, * * *."

On September 5, 1945, E. A. Nabors, representing himself and his sisters and brother and W. C. Nabors entered into an agreement whereby they partitioned the properties which they jointly owned in indivision. Some of the property was then under lease to Gulf Refining Company which also was producing oil from a well being operated by it. That well, however, is not involved in this litigation. The partition agreement was entered into and made subject to both that lease and the lease of the Texas Company and with regard to both it was agreed "that any and all royalties from the production of said wells, accrued and that may accrue, *so long as such production contin-*ues, shall be apportioned and paid, one-half" to E. A. Nabors and his sisters and brother and one-half to W. C. Nabors. We emphasize the phrase "so long as such production continues" because it forms the basis of the demand of E. A. Nabors et als. against W. C. Nabors and Mrs. Parie N. Leach, as transferee, adverse claimants in this concursus proceeding. The transfer of W. C. Nabors' one-sixteenth royalty in the two wells on Lot No. 4 to Mrs. Parie Leach, nee Nabors, was by deed dated July 12, 1948.

Taking up the first contention of E. A. Nabors et als. that the lease of the Texas Company had terminated because of its failure to commence drilling or re-working operations within sixty days from the date on which production of oil had ceased, we find the pertinent facts on which to dispose of it to be as follows:

In May, 1945, Grand Bayou Planting Company well No. 6 stopped producing and was temporarily abandoned. Well No. 12 continued to produce but production was gradually decreasing and had decreased to such extent on September 7, 1947, that it was producing only five barrels of oil per day. On that same day, as appears from the testimony of D. Roper, production foreman for the Texas Company, the tubing in the well burst. They were having tubing trouble which made it difficult to operate the well. Upon consulting his superior about it he was told that they were going to work the well over, so he closed down.

The Texas Company apparently did not delay in contacting a drilling company to work the well over for we find in the record a letter dated September 16, 1947, addressed to it by Hollandsworth Drilling Company of Longview, Texas thanking it for the opportunity of bidding on the work and making its proposal, which evidently was accepted since eventually that company did re-work the well and bring it back into production. Albeit the actual operations by that company did not commence until November 27, 1947, the daily time reports of the Texas Company filed in evidence show that, in the meantime, the following operations were conducted: September 10, 1947—re-legged derrick; September 11—pulled tubing; September 16, 1947—strengthened and re-inforced bridge; September 25—doped tubing and rods; October 1—repaired gas line; November 14—racked and doped tubing; November 21—repaired roads and bridges; November 26—prepared for cable tooling.

The road referred to is the one leading from the highway to the well site over which, and over the bridge also referred to, the heavy machinery and supplies to be used in re-working the well had to be transported. Likewise the gas line referred to is the gas pipeline through which the fuel which served the lease was furnished and it became necessary to repair a leak which had developed so that the line could be used after the drilling rig had moved in.

The evidence further shows that during the Christmas holidays in 1947, E. A. Nabors visited the site of the re-working operations and inquired as to why he had not received royalty checks during the period of the shutdown. At this time he was also informed that the company intended to re-work well No. 6. He did not at this time inform the plaintiff that he considered the lease terminated. In fact, he himself testified that he did not receive information that he considered sufficient to call for a cancellation of the lease until September of 1948.

On September 21, 1948 he wrote to the Texas Company suggesting that they should draw up an agreement for a new lease as he did not consider the work performed by them sufficient to hold the lease in effect. In this letter he stated that his chief concern was a speedy termination of the royalty dispute. (Apparently the dispute between E. A. Nabors, et als. and W. C. Nabors.)

In his letter of October 8, 1948, addressed to Mr. Ira S. Flory, Jr., Mr. Nabors challenges the accuracy of the information he says the Texas Company has supplied him with regarding the re-working of well No. 12 and since he has received definite proof that the lease had terminated in 1947, he returns all royalty checks received from February 16, 1948 through September 15, 1948 and states that under the law of Louisiana his family is entitled to a release by

which the company will acknowledge that the lease terminated in 1947.

According to Mr. Nabors' testimony he did not have what he considered adequate evidence to demand cancellation of the lease until September, 1948. He states that after much effort he and his brother located a man by the name of Niles Copeland who formerly worked for the Texas Company and it was upon knowledge acquired from him that they based their demand for cancellation.

■ In this case the burden of establishing the cancellation of the lease, on which their demand against the Texas Company rested, was on Mr. E. A. Nabors and his group. They had alleged, as adverse claimants in this concursus proceeding, that the lease had terminated because of the Texas Company's failure to comply with the terms of their agreement by commencing re-working operations within 60 days after cessation of production. It became incumbent on them, therefore, to show that no such operations had been commenced with regard to well no. 12 within 60 days from the day it was closed down on September 8, 1947, and yet the proof is all to the contrary.

From Mr. E. A. Nabors' letter of October 8, 1948 to Mr. Ira S. Flory, Jr. of the Texas Company, it appears that he requested the cancellation of the lease, not from the fact that the re-working operations conducted by plaintiff were insufficient, but rather because, as he stated, the information furnished him had no basis in fact. Yet

he produced no evidence whatever to contradict these facts. He seemed to have relied on information furnished him, presumably by Niles Copeland, but Copeland was never produced as a witness even though the trial judge held the case open for twenty days for the specific purpose of taking his testimony. Plaintiff on the other hand produced its time sheets, showing the time, date and crew which performed the operations and also several witnesses who verified these reports.

■ We believe that the operations conducted by the Texas Company between September 10 and November 26, 1947, were sufficient to conform with the provisions of their contract. Operations of a similar nature under a lease which obligated the lessee to "commence operations" within a certain period of time "by drilling, boring, or mining for oil" have been held to be the commencement of work "which satisfied the condition of the lease". See Hudspeth et al. v. Producers' Oil Co. et al., 134 La. 1013, 64 So. 891, 893.

As we have concluded on this issue of the case that the facts are against the contention of the claimants, E. A. Nabors and his group, it becomes unnecessary for us to consider the plea of estoppel filed against them although we might mention that it seems to have considerable merit.

The remaining issue is whether the temporary cessation of production in well No. 12 caused the royalty interest of Mrs. Parie N. Leach to cease.

In this connection it becomes necessary to interpret the language in that clause of the partition agreement of September 5, 1945 which we again quote as follows: "* * * and it is agreed that any and all royalties from the production of said wells, accrued and that may accrue, so long as such production continues, * * *."

■ The construction that E. A. Nabors, et als. would have the court place on this language is that the parties meant that production would have to continue *uninterruptedly* in order for the royalty interest not to cease. There is nothing to warrant our adding a word to the agreement which the parties themselves did not use. We think that their intention is clearly expressed; that is, that the royalty should continue to be divided so long as production was had from either of the two wells, but not that the royalty should cease if production was temporarily interrupted or suspended for repairs or re-working operations on the wells. Had it been proved that the production now being obtained was from a new well, or from a new sand, as alleged by them, the position of the claimants, E. A. Nabors, et als. would be tenable. The evidence shows however that the Texas Company re-worked the same holes and that the present production is being obtained from the same strata. On this issue, the case is with claimant, Mrs. Parie N. Leach and the judgment of the district court properly decreed her to be entitled to the fund deposited in the registry of the court.

For the reasons assigned the judgment appealed from is affirmed at the costs of the appellants.