HAMITER, Justice.
 

 In the latter part of 1953 the plaintiff, T. J. Johnson, drilled two wells to the Paluxy sand (approximately 2,400 feet deep) on a 140-acre tract of land situated in Caddo Parish and held by him under an oil and gas sublease from the defendant, Houston Oil Company of Texas. The first well, which resulted in a dry hole, was abandoned. The second, although not completed as a producer, showed on tests the presence of oil. Known as Caddo Levee Board No. 2, it was capped or plugged with concrete. No further operations under the sublease were undertaken by plaintiff until June, 1954 when he resumed activity with respect to the latter well.
 

 A provision contained in the sublease, among others, was the following: “It is understood and agreed that in the event oil, gas or any other mineral is not being produced in paying quantities from, and drilling or
 
 reworking operations are not being conducted on the property herein-above described on the 27th day of Jtme, 1954, then
 
 .and in such event the interest herein subleased shall revert to Sublessor * * Invoking this provision the Houston Oil Company of Texas telegraphed, as well as wrote; to Johnson -on July 1, 1954 that his sublease had terminated. (Italics ours.)
 

 Thereupon, Johnson instituted this suit against the sublessor seeking a judgment declaring his sublease to be in full force and effect and enjoining interference with his right to develop the property. Specifically, he alleged that on June 27, 1954, in compliance with the provision of the sublease invoked by the defendant, he was actually reworking the above mentioned well No. 2.
 

 
 *449
 
 Denying the essential allegations of the petition, and affirmatively averring a termination of the sublease under its terms and conditions, defendant answered and prayed that the demands of plaintiff be rejected at his costs.
 

 The district court, following a trial of the merits, rendered judgment in plaintiff’s favor, it decreeing the sublease to be in full force and effect and permanently enjoining defendant from interfering with operations thereunder.
 

 The defendant is appealing, and it contends here that the trial court erred in the following particulars:
 

 “1. In finding from the facts that the rig placed by plaintiff at Caddo Levee Board No. 2 well was in operation on June 27, 1954.
 

 “2. In holding that, as a matter of fact, the plaintiff was conducting reworking operations on June 27, 1954.
 

 “3. In failing to require of plaintiff the bona fide intention to proceed with diligence toward the completion of reworking operations and disregarding evidence showing the lack of such intention.
 

 “4.
 
 In holding that the sublease from defendant to plaintiff was maintained in force as a matter of law.”
 

 In connection with the above quoted specification of errors, appellant’s counsel first argue “that a close examination of what took place on June 27, 1954 will resolve this case in its favor, because on that day there was no ‘conducting’ of ‘reworking operation’ as required by the sublease in order to prevent its termination. We believe the evidence will bear out our contention that what took place on June 27th was merely the moving in of a rod and tubing machine aboard a truck and the rigging up of this equipment. We believe that the remainder of the equipment did not reach the site of this well until June 28th. Therefore, no reworking operations were being conducted on June 27th and the sublease expired and reverted to Houston Oil Company.”
 

 With respect to this argument the district judge, as is shown by his lengthy and well considered written reasons for judgment, found the pertinent facts to be as follows: The plaintiff, an experienced oil operator, was aware that his sublease would expire on June 27 unless in connection therewith he was on that day obtaining production, drilling a well, or engaged in reworking operations. However, because of a previous commitment, he was scheduled to be in Montana at such time; and his own drilling equipment was not immediately available. As a consequence, on June 22 he engaged the services of one E, M. Boyter, who conducted a business of drilling, reworking and servicing of wells, to rework his well No. 2, directing that the operations be underway not later than June 27. Further, under plaintiff’s instruc
 
 *451
 
 tions, an associate obtained from the Louisiana Conservation Department on June 26 the required reworking' permit. Then Boyter and his crew, on the important day of June 27, moved a drilling rig, pump, rotary and kelly joint to the well site, assembled them, and commenced to drill out the cement plug. However, shortly after the commencement, the water hose connected with the pump burst. This occurred late in the afternoon; and the crew, being unable to proceed further until a new hose was obtained, ceased work for the day.
 

 There is ample evidence in the record to sustain the described findings. True, the defendant produced witnesses who testified that some parts of the equipment necessary to commence drilling operations (rotary, pump and kelly joint) were not at the site on June 27, they not having seen those items there until the following day. But, as the trial judge aptly noted in his reasons for judgment, some of the witnesses testifying for the plaintiff were men who had actually participated in the moving and assembling of the equipment and had commenced the operations; whereas those giving the conflicting testimony (except one witness who appeared confused as to occurrences on particular dates) were employees of the defendant who worked at a drilling rig some quarter of a mile from the well site and were merely recalling what they did not see on June 27 as they passed to and from their place of employment. Under these circumstances we would not be warranted in disturbing such findings of fact; and we hold, as did the trial judge, that plaintiff was actually engaged in reworking operations on June 27. See Texas Co. v. Leach, 219 La. 613, 53 So.2d 786.
 

 But appellant’s counsel further argue, to quote from their brief, that “should the Court find that reworking operations began on June 27th, the defendant would show that after looking at what happened from that day through June 30th, it becomes clear that this was not an attempt
 
 in good faith
 
 to rework this well, that the law requires a following through which would demonstrate a bona fide intent to rework, and that the behavior of Johnson did not measure up to the requirements of the law under his contract. This light rig was nothing but a sham, it was incapable of doing the work, and the whole venture was abandoned on June 30th, the excuse being that some gas started spewing out of the well making it unsafe to conduct operations.”
 

 As to the happenings after June 27, 1954, the trial judge announced the following findings and conclusion: On Monday, June 28, a new hose, to replace the one that had burst, was purchased and brought to the well site. Meanwhile, on that day and following a breaking of the concrete plug, there was a gas “blow out” in the well. A dangerous situation resulted from the escaping gas, and because of it the workmen refused to continue operations until plaintiff could be contacted and provision made for coping therewith. Whereupon, D. C.
 
 *453
 
 Carnes (an associate), who had been left in charge of the operations on the sublease, telephoned to plaintiff in Montana and told him of the trouble encountered in the reworking of Levee Board No. 2. In the same conversation he was also informed that the defendant company had just brought in a producing oil well in such close proximity to the subleased property that it would be necessary for him to drill an offset well. Plaintiff then instructed Carnes to commence to drill the offset well (it could be drilled in approximately seven days) and to postpone the reworking operations until after it was completed. The drilling of the offset well was commenced on June 30, and it was in progress when the defendant informed plaintiff on July 1st that his sublease was terminated.
 

 The trial judge further found that the equipment used in the reworking operations was adequate for the commencement thereof and could have been readily implemented if that became necessary later on. And he concluded that plaintiff was in no manner in bad faith, commenting: “We are of the opinion that we would have followed the same course.”
 

 Like the trial judge, we find no evidence of bad faith on the part of plaintiff. Required to be away at the time, he instructed his associate to obtain the necessary permit (this instruction was fulfilled), and he arranged with Boyter to undertake the reworking operations. The record shows that the latter is a qualified and capable drilling contractor and that he was fully paid by the plaintiff for the time he kept his crew and equipment at the well site.
 

 Also, plaintiff’s witnesses and at least one of those for the defendant testified that the rig was adequate for performing the reworking operations. Another defense witness stated that it was sufficient for commencing the work and that heavier equipment (plaintiff owned some that was located nearby) could have been brought in later if necessary, a procedure of that nature being sometimes followed.
 

 Furthermore, as before shown, the No. 2 well at the time it was capped with concrete gave indications of being a producer. The defendant company, according to an employee, thought that it would produce and was willing to rework it “right now”. Hence, it cannot be correctly said that the plaintiff was merely going through the motions of reworking what he thought to be a dry hole.
 

 As to the gas blow out and the dangerous situation resulting therefrom there is no conflict in the evidence. Even witnesses for the defendant admitted the danger of continuing to drill in the presence of the gas without taking proper precautions. Of course, they testified that the existence of gas does not usually constitute an insurmountable obstacle in drilling or reworking operations, and that there are several different measures which can be employed to eliminate the hazard. But their testimony only strengthens the conclusion that there
 
 *455
 
 was no bad faith -in delaying the reworking operations in question until the plaintiff could be consulted as to the appropriate safety method to be followed.
 

 As before stated, moreover, plaintiff, on his being informed of the gas “blow out”, was also told that he would be required to drill an offset well because of the oil producer just completed by defendant in close proximity to the subleased property. Therefore, it does not seem proper to conclude that he was in bad faith in electing to commence drilling the offset well, which he would have been required to do in a short time, and to postpone briefly the reworking of Levee Board No. 2.
 

 The cases of Texala Oil & Gas Co. v. Caddo Mineral Lands Co., 152 La. 549, 550, 93 So. 788 and Louisiana Live Stock & Planting Co. v. Kendall, 155 La. 122, 98 So. 862, cited by the defendant, are not apposite. The lease provisions therein required that a well be drilled and completed within a given period. As shown above the sublease involved in this suit provided that it should be forfeited only in the event oil, gas or any other mineral was not being produced in paying quantities or that drilling or reworking operations were not being conducted on a specified date.
 

 Conceding the correctness of defendant’s interpretation of the instant contractual provision, which is that plaintiff was required to be conducting reworking operations on June 27 in good faith, we are
 

 unable to hold that the trial court erred in maintaining the continued existence of the sublease. The evidence in the record amply supports the conclusion that such requirement was satisfied. The fact that after such date certain unforeseen circumstances arose which prompted plaintiff to delay for a short time the reworking of the well which he had undertaken on the designated date does not destroy the effect resulting from the commencement of the operations.
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 FOURNET, C. J., absent.