**IBERIAN OIL CORPORATION**

v.

**TEXAS CRUDE OIL COMPANY.**

Civ. A. No. 8723.

United States District Court
W. D. Louisiana,
Lafayette Division.
Jan. 17, 1963.

Duncan M. Smith, Jr., Lafayette, La., for plaintiff.

Tucker, Bronson & Martin, H. M. Holder, Shreveport, La., and Burney Braly and Scott G. Baum, Jr., Fort Worth, Tex., for defendant.

PUTNAM, District Judge.

## ON SUMMARY JUDGMENT

This suit is before the Court on defendant's motion for summary judgment. Originally filed in the Sixteenth Judicial District Court of Louisiana, in St. Martin Parish, on February 19, 1962, it was removed here on March 5, 1962. This court has jurisdiction under 28 U.S.C.A. §§ 1332 and 1441.

Briefly stated, it appears that on December 2, 1960, Phillips Petroleum Company transferred certain leases and portions of leases to Iberian under an operating "farmout" agreement for oil development. This basic contract was itself transferred by Iberian to defendant by two instruments, executed simultaneously, dated February 23, 1961 but made effective February 2, 1961. An overriding royalty of 5% of net production was, on the same date, conveyed to Iberian.

In the instruments of conveyance, defendant obligated itself to (1) "fulfill the rights, interests and obligations" of Iberian under the December 2 farmout, (2) to notify Iberian thirty (30) days prior to performance date if defendant "elects" not to pay any delay rentals due under the leases or to drill any well or wells called for thereby to prevent forfeiture, and (3) that Iberian shall be a party to any "discussions, conferences, litigations or other controversy relating to any and all boundary disputes affect-

ing" the lands in question, and the Iberian "shall be a party to any boundary agreement affecting said lands."

Consideration for this transfer was a substantial cash payment and the overriding royalty of 5% above mentioned. This overriding royalty was subsequently sold by plaintiff.

The basic agreement from Phillips to Iberian divides the acreage to be developed into Block A, which lies south of the so-called "Lake Chicot Fault" line, and Block B, lying north thereof. It provides for commencing actual drilling of a well on Block A on or before February 1, 1961, under certain conditions, and on Block B on or before April 15, 1961, under certain conditions. After these "initial" wells, Article VII calls for continuous development of each block by drilling additional wells with no more than 120 days intervening between completion of one well and the commencement of the next well until the premises have been developed to a density of one oil well for each 80 acres, or one gas well for each 160 acres, unless a different spacing pattern be fixed by the Louisiana Department of Conservation.

■ Defendant's first argument is that Iberian is without interest to bring this suit, as the transfers from it dated February 23, 1961 are pure assignments of the farmout agreement, and no interest was retained therein by plaintiff. This is not the case, however, for it is conceded that the overriding royalty conveyance was part of the consideration for the transfers, and that they were executed separately because plaintiff's counsel felt it necessary to use this form to meet certain objections made by the Attorney General of Louisiana to the form originally proposed. Among the leases transferred was State Lease No. 411, and plaintiff likewise felt it necessary to obtain the consent of the State Mineral Board to the transfer.

Louisiana law is well settled to the effect that an assignment of an oil, gas and mineral lease disposes of all of the rights of the transferor in the lease or contract, constituting the transferee sole

owner thereof, whereas a sublease is one in which the transferor retains an interest in the minerals resulting from the lease, or some other interest in the subject matter thereof. Since it is conceded that the overriding royalty here was actually a retained royalty by Iberian, we must conclude that these transfers are subleases. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 (1931); Broussard v. Hassie Hunt Trust, 231 La. 474, 91 So.2d 762 (1952); McDonald v. O'Meara, 139 So.2d 282 (La. App.1962), and cases there cited.

Such being the case, a sublessor has standing in Court to demand performance of the lease obligations and forfeiture thereof in event of failure on the part of the sublessee in such performance. McDonald v. O'Meara, supra. Iberian, then, has the right to bring this suit.

■ Plaintiff contends that defendant has defaulted by (1) failing to commence drilling a well on Block B on or before January 18, 1962, (2) failing to commence drilling on Block A before February 1, 1962, (3) failure to notify Iberian 30 days before such wells were to be drilled that it would not perform these obligations under the continuous development clause of the basic farmout as to Blocks A and B; (4) failing to make Iberian a party to certain boundary disputes as required by its subleases, (5) disregarding Iberian in its dealings with Phillips under the basic agreement, (6) failing to market production timely, and (7) failing to pay the overriding royalty reserved to Iberian.

We are of the opinion that defendant's motion for summary judgment should be granted.

The record as made up is most voluminous, consisting of approximately twenty pounds of affidavits, pleadings, depositions and exhibits. Considerable time has been required to sift this mass of material, and the Court will not discuss it in detail.

It is established, however, without serious dispute, that the initial wells, as

distinguished from development wells under Article VII of the farmout, were drilled timely and satisfactorily. Thereafter, until the filing of this suit, development wells were drilled in accordance with the continuous development clause. As to these wells, one of which was due to be commenced on Block A on or before January 18, 1962, and one on Block B on or before February 1, 1962, operations to effect this purpose were *commenced* as that term is interpreted in Louisiana, within the default period.

Defendant's affidavits and proof establish without contradiction that the locations were staked, dredging operations started to prepare the sites (in the lake area covered by State Lease No. 411), and the drilling barge required for such operations located and readied for the work. Moreover, Phillips was consulted in regard to both of these wells, knew of the conditions existing at that time and made no protest whatsoever. In fact it may be said that Phillips acquiesced in whatever delay in actual "spudding" of the wells may have occurred.

In our opinion, operations for drilling these wells had clearly commenced. See 16 Tulane Law Review 573, and cases referred to in that discussion: Johnson v. Houston Oil Co. of Texas, 229 La. 446, 86 So.2d 97 (1956); Texas Co. v. Leach, 219 La. 613, 53 So.2d 786 (1951).

The first two grounds relied upon by plaintiff are without merit. As to the third ground, failure to notify Iberian that it would not perform these drilling obligations, it is obvious that no notice was required because defendant did not "elect" not to perform, but in fact did perform to the satisfaction of Phillips as it was required to do under its subleases.

The fourth contention advanced by plaintiff dissipates on consideration of the deposition of Mr. Wiley and the affidavits of defendant. There was no boundary dispute relating to any of these lands. A question was raised as to ownership of the royalties accruing to the State from production on State Lease No. 411, due to the possibility that alluvion had formed along the water's edge.

Defendant obtained a resolution from the State Mineral Board authorizing withholding of royalties until determination of this issue. It will be noted that Amerada Petroleum Company also has an interest here, and that they became concerned over nonpayment of this royalty. Defendant in this instance acted as a prudent operator would act, and the real party in interest, the State of Louisiana, makes no complaint here. Apparently Phillips is also satisfied with the state of affairs, so that it cannot be said that Texas Crude has failed to "fulfill the rights, interests and obligations" of plaintiff to Phillips under the farmout of December 2, 1960, as it agreed to do.

■ Iberian's fifth and sixth grounds of complaint relate to a failure to market the production obtained at once (defendant waited until arrangements could be made to sell to Phillips and connect to its pipelines, rather than barge the production out at greater cost), and a failure to consult with Iberian as sublessor in its dealings and negotiations with Phillips.

Admittedly such may be the case. But both of these obligations, if found to exist under these contracts, are implied and not express. Before cancellation or forfeiture of the agreement may be claimed for the passive breach of an implied obligation, under the law of this State, it was incumbent on plaintiff to put defendant in default. LSA–C.C. Arts. 1911, 1933. See also: Hiller v. Humphreys Carbon Co., 165 La. 370, 115 So. 623 (1928). Logan v. Blaxton, (La. App.1954) 71 So.2d 675. Plaintiff did not do this. There is no dispute as to this fact in this case. Therefore, conceding the correctness of plaintiff's assertions for purposes of argument, the position most favorable to it, the suit cannot stand.

Lastly, plaintiff complains that the overriding royalty has not been paid. We do not decide here whether Iberian, having sold its interest in this royalty to third persons not before the Court, is a proper party to advance this claim, as it is not necessary to do so. The uncon-

tradicted evidence is that the owners of this interest wrote defendant requesting that they be furnished with division orders on October 3, 1961. Prior to November 10, 1961, they were furnished such instruments, yet only one, Mr. West, executed and returned same. West was paid royalty accruing to him by Texas Crude until Phillips Petroleum Company, purchaser of the production, assumed payment of all royalties so accruing. A failure to pay under such circumstances is not such a breach of contract as would work a forfeiture of these contracts.

The Court is mindful of the settled rule that summary judgment should not be granted unless is appears that under no view of the complaint could relief be granted. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Surkin v. Charteris, 197 F.2d 77 (5 Cir. 1952).

■■■ Defendant has made large investments in developing this property and has heretofore "earned" a substantial portion of the leased premises by its operations. This case is one requiring summary disposition. The action to cancel an oil, gas and mineral lease is an equitable proceeding, and is subject to judicial control. To justify application of the remedy, there must be a substantial breach of the contract. We do not find such a breach here. Midstates Oil Corp. v. Waller, 207 F.2d 127 (5 Cir. 1953); Edwards v. Standard Oil Company, 175 La. 720, 144 So. 430 (1932); Rudnick et al. v. Union Producing Company, 209 La. 943, 25 So. 2d 906 (1946). No purpose can be served by denying the motion now made and deferring decision until after trial on the merits.

Defendant has filed an additional motion to dismiss which it asks be made part of its original motion for summary judgment, based upon alleged extra-judicial "self-help" engaged in by plaintiff since filing of this suit. The view we have taken makes consideration of the matters presented by the amendment superfluous insofar as they relate to dismissal of this action. As to the affirmative relief sought by this amended motion, we do not consider that the cancellation or avoidance of the purported "notice of default" issued by Iberian since the filing of this suit would be appropriate. Defendant's remedies are reserved to it and may be asserted in the future, if necessary, by separate suit.

IT IS NOW ORDERED AND DECREED that the motion for summary judgment filed by defendant Texas Crude Oil Company on April 30, 1962, be and the same is hereby granted, and accordingly, judgment is hereby entered decreeing that the complaint of Iberian Oil Corporation filed herein is dismissed.

IT IS FURTHER ORDERED that all notices of lis pendens filed by Iberian in connection with this suit be, and they are hereby ordered and directed to be cancelled and erased.

No further judgment or decree is considered necessary, the foregoing being the judgment of the Court.