180 So.2d 746 (1965)
C. Paul HILLIARD, Plaintiff-Appellee,
v.
Kenneth FRANZHEIM, II, Defendant-Appellant.
No. 1571.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
Rehearing Denied December 22, 1965.
*747 Aaron & Aaron, by J. Donald Aaron, Crowley, for defendant-appellant.
Davidson, Meaux, Onebane & Donohoe, by Lawrence E. Donohoe, Jr., Lafayette, for plaintiff-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
The trial court awarded the plaintiff $5,868, allegedly owed to him as the unpaid purchase price of overriding royalty. The defendant appeals.
The plaintiff Hilliard sues upon a written agreement by him to sell and the defendant Franzheim to buy an overriding royalty interest in the vicinity of a well to be drilled by Hilliard. As a condition of the sale, Hilliard agreed to drill a well on the tract, with the well "to be started" within ninety days of Hilliard's acceptance of Franzheim's agreement to buy. The ninety days expired March 20, 1961. The defendant Franzheim contends that he is not liable for the purchase price because Hilliard did not "start" the well within the required ninety days.
Preparatory surface operations to drill the leased tract were commenced by Hilliard as early as March 3rd. However, the drilling rig was not actually moved onto the tract to the well location until March 24th. The well was not "spudded in" (the first boring into the ground) until March 26th.
The defendant contends: (1) the plaintiff's contractual obligation for the well "to be started" within ninety days was intended to mean that the well be "spudded" in within such period, i. e., to mean that actual drilling be commenced within the time limit; (2) alternatively, even if surface preparatory operations can be considered "starting" a well, those conducted by the plaintiff were insufficient in extent to be so considered.

I.
The agreement was reached by the plaintiff Hilliard's written acceptance December 20th of a letter agreement by Franzheim to purchase a 1/32nd overriding royalty interest on described property, "subject to the following conditions: That you [Hilliard] will drill or cause to be drilled a well [on the tract] * * * to a depth sufficient to penetrate the producing zone in [a described sand]. * * * This well * * * is to be started within 90 days of your acceptance of this letter. The purchase price will become due upon our [Franzheim's] receiving written notice that this well has been spudded and a proper recordable conveyance of our interest has been delivered to our bank for collection."
We find no merit in the defendant's contention that the terms "started" and "spudded" in the agreement were intended to be synonymous, so that the defendant was not obligated to buy the royalty unless the well was "spudded" in within the ninety days.
In the first place, the term to "spud in" has a well-defined meaning in the oil industry as the first boring of the hole in the ground, that is, the first actual penetration of the earth with a drilling bit; it has a distinct meaning different from other terms of the industry, such as to "commence to drill", which refer to the first operations on the land preliminary to the actual drilling or spudding in. Williams and Meyers, Oil and Gas Terms (Baker and Co., 1957), verbo "Commencement of drilling", p. 36, verbo "Spudding in", p. 236. This is shown not only by the jurisprudence and texts to be cited in II below, but also by expert testimony in the present record. Had the present agreement been intended to obligate the defendant to buy the royalty only if the well was "spudded" in within the ninety days, the *748 agreement would have so specified instead of using the term "started", which like the term "commence" implies initial pre-drilling operations. Cf., Webster's Unabridged International Dictionary (2nd ed., 1960), verbo "start" definitions, such as: "* * * to give an initial impulse or help to; * * * to cause to begin * * *."
In the second place, the very circumstance that the agreement itself uses these distinguishable terms is indicative that they were not intended to have the same meaning. Franzheim's obligation to buy was conditioned on the well being "started" within ninety days, but his obligation to pay the purchase price matured when the well was "spudded". If Franzheim's obligation both to buy and also to pay had been intended to be conditioned upon the same event, then in our opinion different terms with distinguishable meanings would not have been utilized to define the event(s) conditioning his respective obligations to buy and to pay.

II.
The defendant Franzheim alternatively contends that, in any event, the operations conducted by Hilliard on the tract within the ninety-day delay were not sufficient to be considered a "starting" or "commencement" of the well.
No case was cited to us concerning a requirement in an overriding royalty sale that a well be "started" within a certain period. The cases cited to us mainly involve clauses in mineral leases, with the interests of lessors and lessees possibly involving different considerations than those pertaining to the parties to an overriding royalty sale. The cited decisions interpret the meaning of such phrases as "commence drilling", "commence drilling operations", "commence a well", "commence operations", "commence to drill a well", etc.
For what applicability it may have to the interpretation of the present royalty contract, the general rule to be drawn from these decisions is that actual drilling is unnecessary to "commence" a well within the meaning of the lease provisions; and that substantial surface preparations to drill are sufficient to be considered "commencement" of drilling operations for lease-clause purposes, such as making and clearing a location, delivering equipment to the well site, and the like, provided that such preliminary operations are continued in good faith and with due diligence until the well is actually spudded in. Moses, What Constitutes Commencement of Operations Under an Oil, Gas and Mineral Lease, 16 Tul. L.Rev. 573 (1942); 2 Summers Oil & Gas (1959 ed.) Section 349 (p. 459), cf. Section 300.1 (p. 251); Brown, The Law of Oil and Gas Leases (1958) Section 7.04 (p. 127).
The Louisiana decisions apply this general rule: Johnson v. Houston Oil Co., 229 La. 446, 86 So.2d 97 (clause: "reworking operations * * * being conducted."); Texas Co. v. Leach, 219 La. 613, 53 So.2d 786 ("commences drilling or reworking operations"); Crye v. Giles, La.App. 2 Cir., 200 So. 155 ("[i]f operations for drilling are [not] commenced"); cf., Hudspeth v. Producers Oil Co., 134 La. 1013, 64 So. 891 ("commence operations"). See also: Wehran v. Helis, La.App. 4 Cir., 152 So.2d 220 (which concerns a lease definition of when operations shall be deemed to have commenced); Sterling v. McKendrick, La.App. 4 Cir., 134 So.2d 655; Iberian Oil Corporation v. Texas Crude Oil Co., W.D., La., 212 F.Supp. 941 (1963), affirmed, 5 Cir., 328 F.2d 832 (1964).
The defendant points out, however, that in all these Louisiana cases the operations were deemed to have commenced because some equipment directly connected with drilling the well was being used or was located upon the leased premises within the required period. None of the Louisiana decisions concerned only clearing the tract and building a board road for the drilling equipment as does the present.
While such activities might not necessarily commence "operations" within the meaning of mineral-lease drilling *749 clauses, we nevertheless believe that the below-described activities, by or on behalf of the plaintiff in fulfillment of his obligation to drill the well in the agreement to sell and buy an overriding royalty, are sufficient to be considered compliance with the contractual condition that the well "be started" before March 20, 1961, at least here when the agreement contemplated the well would be "spudded" at a significant interval subsequent to its being "started":
The location of the well was staked at the site on March 3, 1961, on which date a permit to drill was secured. On March 13, 1961, a contractor moved lumber onto the proposed location, levelled the well location, and installed a culvert and a cattle guard. From March 14, 1961 through March 20, 1961, the contractor constructed a board road and turnaround (for the subsequent use of the heavy drilling equipment) at the drilling site at a cost of some three thousand dollars, with further preparatory site work being done on March 21-22. On March 15, 1961, a firm contract for drilling operations was entered into with the Delta Drilling Company, which had drilling machinery located nearby.
Following these preparatory actions: The rig of Delta Drilling Company was moved to the proposed well location on March 23-24, 1961, or three days after the ninety-day period had expired. Actual drilling commenced on March 26th and continued to the required depth until the well was abandoned as a dry hole on April 13th. All of the preliminary and drilling operations were performed diligently and continuously in a good faith effort to discover minerals.
We conclude that the trial court correctly held that the plaintiff Hilliard had "started" the well within the ninety-day period, and that the defendant Franzheim is therefore obligated to pay for the overriding royalty interest in question. In passing, we note that Hilliard had sent executed royalty deeds to Franzheim on March 23rd and that the deeds were retained in Franzheim's office during the latter's absence from the country until long after the well was plugged as a dry hole on April 13, 1961, despite repeated attempts by the plaintiff to secure word or payment from Franzheim or his office while the well was being drilled, with letters and telephone calls received by Franzheim's secretary. No effort whatsoever was made by Franzheim or his secretary to return these royalty deeds to the plaintiff Hilliard until after the well proved to be a dry hole, although Franzheim was in touch with his secretary while on his trip.

III.
The defendant also specifies other alleged errors of the trial court. As to these specifications of error, we think that the trial court correctly held under the evidence (1) that the inclusion by Hilliard of a clause reserving the right to pool the overriding royalty was in accord with customary practice and was within the intent of the parties, and (2) that the plaintiff's delivery of the executed royalty sale to the defendant's office rather than to the bank specified in the written agreement was in accordance with a subsequent mutual agreement of the parties. We likewise find to be without merit other allegations of error made in the course of defendant's brief which were not specifically referred to in the brief's formal specification of errors.

Decree.
For the foregoing reasons, we affirm the judgment of the trial court granting the plaintiff judgment for the unpaid purchase price of the royalty interest. The defendant-appellant is to pay the costs of this appeal.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., absent.