BOLIN, Judge.
This is a suit to cancel an oil and gas lease and for damages and attorney’s fees on the ground that the primary term of the lease had expired prior to the time lessees became “engaged” in drilling operations.
For written reasons the lower court rendered judgment in plaintiffs’ favor ordering cancellation of the lease, the removal by defendants of all equipment from plaintiffs’ property, and awarding damages in the sum of $2500, and $4500 as attorney’s fees. From this judgment defendants appeal and plaintiffs answer the appeal asking for an increase in the money judgment.
For the reasons hereinafter expressed, we conclude the judgment of the lower court should be reversed.
The lease involved in this controversy, dated April 30, 1963, was for a primary term of five years. Among other provisions the lease contained the following clauses, interpretation of which is determinative of this appeal:
“If operations for drilling are not commenced on said land on or before one year from this date, the lease shall then terminate as to both parties unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Jonesboro State Bank at Jonesboro, Louisiana, * * * the sum of Forty and no/100 ($40.00) Dollars, (herein called rental), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. * * * ” (Emphasis supplied)
“5. If prior to discovery of oil, gas, sulphur or other mineral on said land, lessee should drill a dry hole or holes, thereon, or if after discovery of oil, gas, sulphur or other mineral, the pro *844 duction thereof should cease from any cause, this lease shall not terminate if lessee commences operations for additional drilling or reworking within sixty days thereafter or (if it be within the primary term) commences or resumes the payment or tender of rentals on or before the rental paying date next ensuing after the expiration of three months from date of completion of dry hole or cessation of production. If during the last year of the primary term and prior to the discovery of oil, gas, sulphur or other minerals on said land lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term oil, gas or other mineral is not being produced on said land but lessee is then engaged in drilling or reworking operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and draining the leased premises, lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.” (Emphasis supplied)
The lease, which covered forty (40) acres of land in Bienville Parish, was included in a 640 acre drilling ufiit established by the Louisiana Department of Conservation. By a series of conveyances the lease was. acquired by Continental Oil Company, Franks Petroleum, Incorporated, and King Resources Company, with Franks designated as operator. Franks employed L. R. Bram-mer, a petroleum engineer, to handle the drilling of the unit well in the section.
On April 21, 1968 a licensed engineer staked a location for the drilling of the unit well on the 40-acre tract owned by plaintiffs. On April 22, Brammer, as agent of the operator, filed an application with the Department of Conservation for a drilling permit, which was granted on April 24.
On April 23, Brammer consulted a construction company concerning the location and building of an access road from the parish road to the well site, and on April 24 clearing operations for the road were begun by the use of a bulldozer. On the same day the operator of the bulldozer dug the requisite slush pits. By April 27 the well site had been graded and the access' road had been built and partially graveled. On April 28, Rex Drilling Company, which had contracted to drill the well, was in the process of moving the drilling rig onto plaintiffs’ property when a heavy rain occurred, washing out a portion of the road and making it necessary to stack the rig beside the road — on the unit but not at the well site. The following day Rex Drilling Company dragged a truck in to the location and laid gas and water lines. On April 30, a well-servicing company had its spudder rig pulled onto the well site by the use of a bulldozer, a hole was drilled, thirty-five feet of 14-inch conductor pipe was set at the drill site, and the next day concrete was poured around the conductor pipe. It was determined the gravel road was impassable for oil field vehicles and a board road was constructed.
Operations continued diligently until the large drilling rig was finally set up on May 8, 1968 and. actual drilling by Rex Drilling Company was begun pn May 9. Drilling continued from May 9 until June 13, when the well was completed as a producer of gas and distillate at a total depth of approximately 8500 feet. The Conservation Department gauged the well, production was begun and continued, with sales of gas to Arkansas Louisiana Gas Company commencing August 8, 1968. The well was in production when suit was filed on January 30, 1969.
.The trial judge reasoned the provisions in paragraphs 4 and 5, quoted supra, relating to drilling operations, had different *845 meanings. He interpreted paragraph 4 to require only preparatory work for actual drilling but, since “engaged” appeared in the past tense in paragraph 5, he reasoned that more than mere preparatory work was required by the latter provision in order to extend the lease beyond its primary term.
The principal issue on appeal is whether, prior to the expiration date of the primary term of an oil and gas lease, the lessee must be “engaged” in drilling operations to the extent of actually penetrating the earth with the drilling rig; or whether the commencement of substantial preparatory work by lessee prior to expiration, followed by diligent efforts resulting in actual production, is sufficient.
We think the rule controlling this case is well stated in Summers Oil and Gas, Sec. 349, Vol. 2, pages 459-465, as follows:
“There are several provisions of an oil and gas lease which make it necessary to determine what constitutes the beginning or commencement of a well or of drilling or reworking operations. In the drill or forfeit development clause the lessee promises to commence the drilling of a well within a stated time. In the drill or pay development clause the lessee promises to commence the drilling of a well within a certain time or pay delay rental to extend the drilling privilege. The unless development clause provides that the lease shall terminate if the lessee does not commence the drilling of a well or pay delay rental on or before a certain date. A well completion clause, modifying the usual habendum clause, provides that if the lessee commences a well within the primary term of the .lease, he can extend the lease beyond the primary term by continuous drilling.
“The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease.
“If the lessee has performed such preliminary acts within the time limited, and has thereafter actually proceeded with the drilling to completion of a well, the intent with which he did the preliminary acts are [sic] unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.”
In our opinion the following cases reflect Louisiana decisions are in accord with the general rule as heretofore stated: Hilliard v. Franzheim, (La.App. 3rd Cir. 1965), 180 So.2d 746; Wehran et al v. Helis, (La.App. 4th Cir. 1963), 152 So.2d 220; Crye v. Giles (La.App.2d Cir. 1941), 200 So. 155. See also “What Constitutes Commencement of Operations Under an Oil, Gas and Mineral Lease”, 16 Tul.L.Rev. 573, at 584 (1942).
We conclude the terms relating to “drilling operations” in paragraphs 4 and 5 of the lease have rightfully been construed to be synonymous. The difference in the two paragraphs is in their purpose: in order to maintain the lease for an additional year (during the primary term) the lessee must commence drilling operations on or before expiration of the anniversary date of the lease or pay delay rentals; but on the expiration date of the primary term, the lessee no longer has the privilege of extending the lease unless he is then “engaged in drilling * * * operations”. Clearly, the dominant purpose of paragraph 5 is to require the lessee to make a good faith effort to secure production of minerals without undue delay or cessation for more than thirty days.
To encourage production, paragraph 5 provides the lessee must be engaged in drilling or reworking operation “at the expiration date of the lease” and the “lease *846 shall remain in force so long as operations are prosecuted” with due diligence until oil or gas is discovered. When the purpose of each paragraph is understood, it seems evident the wording would be slightly different in order clearly to convey the intended meaning. We conclude, in the instant case, the lessee commenced drilling operations prior to the expiration of the primary term of the lease and thereafter engaged in these operations continuously, without interruption, resulting in the production of gas in paying quantities. Therefore, the ruling of the lower court ordering cancellation of the lease and awarding damages was erroneous.
Having concluded the judgment of the lower court should be reversed on grounds heretofore stated, we pretermit a ruling on defendants’ alternative plea that, since any delay in prosecution of drilling operations was caused by heavy rains, such delay should be excused under the provisions of the “force majeure” clause.
For the reasons assigned, the judgment appealed from is reversed and set aside and the demands of plaintiffs, I. J. Allen and C. H. Allen, against defendants, seeking cancellation and erasure from the records of that certain oil, gas and mineral lease executed by I. J. Allen and C. H. Allen in favor of J. Howard Hooper, dated April 30, 1963, recorded in Conveyance Book 255, page 31, Bienville Parish, Louisiana, are rejected. The land covered by the mineral lease is more particularly described as the Northwest Quarter (NW }4) of the Southeast Quarter (SE J4), Section 20, Township 15 North, Range 4 West, Bienville Parish, Louisiana.
It is further ordered that the judgment awarding plaintiffs $2500 as damages.and $4500 attorney fees is reversed and their demands are rejected.
Plaintiffs are assessed with all costs, including the cost of this appeal.