BROWN, Chief Judge.
1 plaintiff, Robert W. Morgan a/k/a Morgan Enterprises, Inc. (“Morgan”), filed suit on February 8, 2010, against Winbeau Oil & Gas Co., Inc. (“Winbeau”) and Eugene Farr (“Farr”) seeking either rescission of the assignment of mineral leases in Red River Parish or money damages. Morgan obtained a preliminary default on April 19, 2010. A hearing in open court for confirmation of the default took place on May 3, 2010. Morgan testified and three exhibits were introduced into the record. The exhibits included documentation of service or attempts to serve the defendants, the assignment from Morgan to Winbeau, and an assignment of the leases dated August 6, 2009, from Winbeau and Petrohawk Properties, L.P. The trial court granted judgment in favor of Morgan “rescinding' and declaring null and void the Assignment dated February 9, 2009, between Plaintiff Robert W. Morgan and Defendant Win-beau Oil & Gas Co. Inc.” Petrohawk was not a party to this action and the judgment did not determine the viability of the August assignment to Petrohawk. Winbeau now appeals.

Facts

Morgan testified that Farr called him in January 2009 to buy leases he had in Red River Parish. Morgan had purchased the leases in 1995. He told Farr that he was not sure the leases were still good and that he thought he had a total of 300 acres. Farr related that he would see whether he could find the leases and determine whether they were still good.
Morgan testified that Farr called two or three' days later to say that he had checked on the leases at the courthouse and found that the leases covered about 150 acres. Farr stated that he still wanted to buy them. When |2Morgan asked whether the leases were any good, Farr told him, “No, they’re no good.” Morgan then told Farr that he would have to send someone to the Red River Parish courthouse to check the leases. According to Morgan, Farr responded, “That’s not necessary. I’ve already checked it out. They’re no good.”
When asked by his attorney whether he asked Farr why he wanted the leases if *1204 they were no good, .Morgan answered, “Yeah. He said there may be some Hos-ston leases good or something in it that would help him get his leases back together under his well.”
Morgan testified that he did not send anyone to Red River Parish to check on the. validity of the leases. He explained that he knew Farr from a transaction they did in 1995 and that “he seemed to be an honest kind of guy and pretty capable of checking leases.” Morgan further explained that they had “talked leases a lot back in that span of time so I just went basically on his say so.” Morgan related that leasing was Farr’s forte and that his area of expertise was working on wells. He stated, “I didn’t know anything about leasing.” He further stated that Farr “knew that I didn’t know anything about leases.” When asked whether Farr was aware that he was relying on him or whether Farr tried to persuade him to rely on his statement regarding the validity of the leases, Morgan answered “yes” and said that Farr told him that he had checked out the leases and that they were no good.
Thereafter, Morgan found out that Win-beau had sold the leases to Petrohawk. Morgan testified that the leases listed in the attachment to his |sassignment to Win-beau were the same as those listed in an attachment to the assignment between Winbeau and Petrohawk.
When asked whether he would have assigned the leases to Winbeau if he had known they were still in effect, Morgan answered, “No, not, certainly not for that price. I doubt I would have-there’s been no point to sell them to him at all really. He still would be acting as a middle man.” Morgan testified that Winbeau paid him $7,000 and that he would not have sold good leases for that price but for the fact that Farr assured him that his leases had expired-.
Based on the above testimony and the exhibits in evidence, the trial court rendered judgment rescinding the February assignment to Winbeau and declaring the assignment to be null and void. Following the default judgment, Winbeau filed a sus-pensive appeal. Winbeau asserts that the trial court erred,by granting the default judgment and questions whether the default judgment is a final judgment. Arguing that Morgan Enterprises^ Inc., rather than Morgan individually, owned the leases and was the party, to the assignment but that Morgan, in his individual capacity, is the plaintiff in this suit, Winbeau has filed an exception of no right of action before this coui't. We reach neither these issues, however.

Discussion

We first note that the introduction of a certified copy of the assignment between Winbeau and Petrohawk raises questions about the practical effect of a default judgment rescinding the assignment from Morgan to Winbeau. The sale to Petrohawk was filed six months after | Morgan transferred his interest to Winbeau. As a third party, Petrohawk may be entitled to the protections afforded by the public records doctrine.
Petrohawk is the record owner of the leases and a party “needed for just adjudication” (formerly called an “indispensable party”).
La. C.C.P. art. 641 states:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is *1205 so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
La. C.C.P. art. 642 states:
If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:
(1) To what extent a judgment rendered in the person’s absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person’s absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
|sLa. C.C.P. art. 645 provides that:
The failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion. (Emphasis added).
La. C.C.P. art. 646:
When the failure to join a party is pleaded successfully in or noticed by a trial court, the latter may permit amendment of the petition so as to make him a party, and may reopen the case if it has been submitted and further evidence is necessary. When such failure is pleaded successfully in or noticed by an appellate court, the latter may remand the case for such amendment and further evidence. (Emphasis added).

Conclusion

Accordingly, we reverse and remand for plaintiff to amend its petition to add Petro-hawk as a party and to thereafter seek nullification, or alternatively, monetary damages.[1]' '
Reversed and Remanded.
STEWART, J., concurs with reasons.

. There was some indication that Farr and Winbeau were working for Petrohawk; however, if Petrohawk’s claim is protected under the public records doctrine then petitioner’s only remedy would be money damages.