MOORE, J.
|! Edgar and Flora Cason appeal a judgment that overruled their exceptions and granted a preliminary injunction in favor of Empress Louisiana Properties, prohibiting the Casons from interfering with the construction of a gas pipeline from a well *438 drilled on land leased from the Casons. For the reasons expressed, we affirm.

Factual and Procedural Background

The Casons own, among other properties, a 68-acre tract (“the lease tract”) between the Red River and Loggy Bayou in the northwest part of Sec. 24, T14N, R11W, Red River Parish. On May 31, 2005, they granted an oil, gas and mineral lease covering 7,200 acres (including the lease tract) in favor of Pride Oil & Gas. With extensions that were exercised, the primary term of the Pride lease was five years, ending on May 31, 2010. This lease contained a clause (¶ 6) continuing the lease as long as the lessee is “engaged in operations for drilling”; another (¶ 9) permitting ingress and egress to the lease tract on “adjacent or adjoining lands” to build necessary roads and pipelines; and another (¶ 10) allowing either party to assign its rights in whole or in part.
Pride Oil assigned its interest to EnCa-na in early 2007; EnCana partially assigned its interest to SWEPI LP; EnCana and SWEPI partially assigned their interest to Empress in 2009. As a result, the lease is now owned by EnCana and SWEPI, subject to a sublease in favor of Empress. In 2009, EnCana obtained a unitization order placing the lease tract in a unit designated as HA RD SUO.
12According to the Casons, none of the assignees or sublessees took any actions that would continue the lease beyond its primary term-no drilling operations or drilling permit from the Office of Conservation. However, on May 28, 2010, employees of Chesapeake, Empress’s parent company, and of Fluid Disposal, a contractor, entered the lease tract without prior approval from “One Call,” an entity that tracks underground pipes and cable and must approve any excavations; on May 29 and 30, contractors entered the lease tract to cut trees and stack the lumber; and on June 1, after getting approval from One Call, Chesapeake’s men entered and began building a road and well pad.
Feeling that the Pride lease had expired, the Casons leased the same tract to Goodrich Petroleum on June 7, with the proviso that Goodrich could never assign any interest to Chesapeake; on June 11, Goodrich obtained a drilling permit from Conservation. However, Empress’s contractors continued daily work on the site, which was designated -as the “Cason 24 well.” In July, Goodrich executed a change of operator form naming Chesapeake as the operator of Cason 24. The well was spudded on July 22.
The Casons filed this suit on August 17, 2010, against Chesapeake, Empress, En-Cana, Fluid Disposal and SWEPI. They alleged that the minor work performed on the lease tract on May 29-31 did not constitute “operations for drilling” sufficient to continue the lease beyond its primary term. They demanded a declaration that the Pride lease terminated on May 31, 2010; damages for trespass after that date; an injunction to cease all operations; and other damages.
IsEmpress answered that it fulfilled all obligations under the Pride lease, specifically that it caused the Cason 24 well to be drilled. Empress also reconvened for an injunction to prevent the Casons from interfering with its lease. Empress alleged that as of July 2011, it had spent $8.5 million on Cason 24, yet the Casons were refusing to allow Empress’s contractors to lay a gas pipeline north from the well to a connector line in Section 13, due north of Section 24, on an adjacent tract owned by the Casons but not part of the lease tract.
The Casons responded with exceptions of no right of action, nonjoinder and unau *439 thorized use of summary proceedings, and two exceptions of no cause of action.[1]

Synopsis of Trial Evidence

At the start of trial on August 1, 2011, the district court heard arguments and rejected most of the Casons’ exceptions. Over the next two days, Empress called four Chesapeake managers.
• James Forney, a senior landman, testified that Mr. Cason had objected to extending operations and asked him to delay spudding for 90 days, presumably so the lease would expire. For-ney admitted that Chesapeake did not obtain a drilling permit within the primary term, but insisted that in that time frame they did surveys that were vital to the drilling. Also, after Cason 24 was completed but before the pipeline was laid, Chesapeake sent the Ca-sons a shut-in royalty of $5,764, but they refused to cash the check.
• Andy Widmer, a Chesapeake corporate representative, testified that the company hired Fenstermaker, a surveying | ¿company, on April 26, 2010; surveyors were on the ground May 4-7, tying off the section corners, and May 26-28, staking the pad. Widmer considered these operations for drilling. He also referred to Exhibit D-16, an invoice from Fenstermaker, to show that surveyors and technicians were “on the ground” on those days; the Casons objected to this document for lack of foundation.
• Carlos Evans, manager of gas sales, testified that he started researching production issues on May 10, and decided that the only feasible option for moving gas from Cason 24 was to run a pipeline north to KinderHawk’s gathering station in Section 13, due north of Section 24. Chesapeake signed a gathering agreement with KinderHawk to build this line, but the Casons refused to grant KinderHawk a right-of-way. A copy of the gathering agreement, heavily redacted to preserve the parties’ confidences, was admitted as Exhibit D-22, over the Casons’ objection. Evans estimated that Chesapeake was losing about $1,000,000 a month because it could not move this gas.
• Robert R. Stall, now a senior analyst for Chesapeake Midstream, testified that he worked for KinderHawk when D-22 was executed; he agreed that the line north to KinderHawk’s station in Section 13 was the most direct route to move Cason 24’s gas, but the Ca-sons refused to grant them a right-of-way.
Empress’s most expansive evidence came from an expert, Philip N. Aspro-dites, an attorney who was Louisiana Commissioner of Conservation for four years in the first Mike Foster administration, chairman of the Interstate Oil & Gas Commission, currently serves on the Mineral Law Institute at LSU, and has an active oil and gas legal practice. He carefully reviewed everything that Empress did prior to May 31, 2010 — putting surveyors on the ground, staking the well and cutting trees to lay a road — and concluded that these operations equaled “commenced operations.” He felt it did not matter that Empress did not obtain a drilling permit before May 31. On cross-examination, he *440 admitted it was not “standard practice” to do so much and then not get a drilling permit until 45 days after the end |sof the primary term, but he stressed that the lease tract posed special difficulties requiring extensive preparatory work.
The Casons’ only witness was Mr. Ca-son, who testified that the work he observed on May 28-31 was “slow-pace” and “counterproductive,” accomplishing in four days what he could have done in one. He insisted that he only objected to these operations, but did not interfere, and he opposed the pipeline in Section 13 only because there were already 9-12 pipelines in the area, and he was concerned for everyone’s safety. He also admitted that his new lease with Goodrich had given him much better terms than the original lease.

Action of the District Court

The court ruled orally, overruling the Casons’ second exception of no cause of action and finding that Empress had made a prima facie case that it would prevail on the underlying claim. Further, the defendants were engaged in drilling operations prior to the end of the primary term and their conduct was in good faith. The court later signed a judgment and a separate order granting Empress’s preliminary injunction. The order required Empress to post a security bond of $150,000.[2]
The Casons have appealed, advancing 12 assignments of error by which they ask this court to reverse the preliminary injunction, reverse the rulings on the exceptions, and award the Casons damages, costs and attorney fees.
| ¡^Empress is joined by Chesapeake and Fluid Disposal on brief, urging this court to affirm. EnCana and SWEPI have also filed a brief seeking affirmance.

Discussion: Engaging in Operations

By their second assignment of error, the Casons urge that Empress failed to make a prima facie case for maintaining the lease beyond the primary term. They contend they are entitled to de novo review because the district court required only a prima facie showing; in support, they cite Mary Moe LLC v. Louisiana Board of Ethics, 2003-2220 (La.4/14/04), 875 So.2d 22. On the merits, they contend that Empress filed no application for a drilling permit; Chesapeake’s surveyors did not complete a drilling survey, and Chesapeake itself provided no notice of intent to drill until long after the primary term ended; neither Empress nor any of its contractors moved equipment or materials onsite, dug any pits or performed any of the activities recognized in the jurisprudence as operations necessary to maintain a lease. Further, no Louisiana case has ever maintained a lease on such minimal conduct. The Casons distinguish Crye v. Giles, 200 So. 155 (La.App. 2 Cir.1941), Johnson v. Houston Oil Co., 229 La. 446, 86 So.2d 97 (1956), Hilliard v. Franzheim, 180 So.2d 746 (La.App. 3 Cir.1965), and Allen v. Continental Oil Co., 255 So.2d 842 (La.App. 2 Cir.1971), writ ref'd, 260 La. 701, 257 So.2d 156 (1972), all of which found sufficient operations to maintain a lease. The Casons conclude that on de novo review, this court should reverse the finding that Empress made a prima facie showing.
1/Empress responds that the correct standard of review is that the grant of a *441 preliminary injunction will not be disturbed except for a “clear abuse” of the trial court’s discretion, Frank L. Maraist, 1A La. Civ. L. Treatise, § 1.2 (2011), and the court’s findings were no abuse of discretion. The items on Fenstermaker’s surveying invoice, May 4-7 and May 26-31, 2010, the corroborating testimony of Forney and Widmer, and the expert testimony of Mr. Asprodites, taken together, support the court’s finding of preparatory activities necessary to drill Cason 24. The jurisprudence distinguishes between actual spudding and commencing to drill, Hilli-ard v. Franzheim, supra, and holds that actual drilling is unnecessary, Allen v. Continental Oil Co., supra. Empress concludes the court committed no manifest error.[3]
EnCana adds that acts preliminary to the beginning of the actual work of drilling, when performed in good faith, constitute a commencement of drilling operations under the “engaged in operations” clause. Allen v. Continental Oil Co., supra; Leslie Moses, “Bench and Bar: What Constitutes Commencement of Operations Under an Oil, Gas and Mineral Lease,” 16 Tul. L.Rev. 573, 584 (1942). Further, merely providing access to the lease tract is deemed sufficient operations to maintain the lease. Breaux v. Apache Oil Corp., 240 So.2d 589 (La.App. 3 Cir.1970).
At the outset, we note that the grant or denial of a preliminary injunction is left to the sound discretion of the trial court and will not be |sdisturbed on appeal except for a clear abuse of that discretion. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Farmer’s Seafood Co. v. State, 2010-1746 (La.App. 1 Cir. 2/14/11), 56 So.3d 1263. Mary Moe LLC, supra, is inapposite: the opinion refers only to the citizens’ petition for injunctive relief, numerous subpoenas and a “closed hearing” held in the district court. A trial court may hear a preliminary injunction solely on the verified pleadings or supporting affidavits, if proper notice is given. La. C.C.P. art. 3609; State v. Twin Cities Memorial Gardens Inc., 43,568 (La.App. 2 Cir. 9/17/08), 997 So.2d 16. Mary Moe holds that in such a situation, de novo review is proper. However, when the trial court receives evidence and makes factual determinations, the proper standard is abuse of discretion. Smith v. West Virginia Oil & Gas Co., supra; Farmer’s Seafood Co. v. State, supra; Maraist, op. cit., n. 33. Such is the case here.
On the merits, the crucial question is whether Empress’s activities on the lease premises amounted to “engaged in operations for drilling” such as to continue the lease beyond its primary term. In Allen v. Continental Oil Co., supra, this court discussed the requirement of being “engaged in drilling operations”:
The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling *442 operations within the meaning of this clause of the lease.
If the lessee has performed such preliminary acts within the time limit, and has thereafter actually proceeded with the 1 grilling to completion of a well, the intent with which he did the preliminary acts [is] unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.
255 So.2d at 845, quoting 2 Summers Oil & Gas, § 349, pp. 459-465.
In Breaux v. Apache Oil Corp., supra, the court found that building a board road and turnaround to the well location satisfied a clause requiring the lessee to “commence operations for the drilling of a well” before the expiration of the lease. In Hilliard v. Franzheim, supra, the court found that staking the site, obtaining a drilling permit, moving lumber onsite and leveling the well location, building a board road and placing drilling equipment nearby satisfied a clause requiring the well “to be started” within a specified time. In Johnson v. Houston Oil Co., supra, the court found that hiring a drilling contractor, getting a drilling permit and moving drilling equipment onsite constituted “drilling or reworking operations” sufficient to extend the lease. In Crye v. Giles, supra, this court held that erecting a derrick, digging a slush pit and laying drill stem on the ground were activities sufficient to maintain a lease which would expire unless “operations for drilling are commenced” by a certain date. At the other end of the spectrum, this court recently stated that merely obtaining a drilling permit did not satisfy the “engaged in operations” clause. Pilkinton v. Ashley Ann Energy, 46,650 (La.App. 2 Cir. 11/2/11), p. 11, 77 So.3d 465, 472, writ denied, 2011-2657 (La.2/10/12), 80 So.3d 484.
An early commentator summarized the jurisprudence of Louisiana and other oil-producing states as follows:
|inIt can be seen readily, therefore, that where the lease provides for commencement of operations, the courts will hold that operations preliminary to the actual drilling of the well are sufficient compliance with the terms of the lease, provided, however, that such preliminary operations are continued in good faith, without undue delay, and with due diligence and dispatch, and thereafter the well is begun and completed. What constitutes good faith is determined by the subsequent conduct of the lessee, and no hard and fast rule can be laid down. Each case must stand on its own set of circumstances, and the intent of the lessee is the determining factor in arriving at a proper decision. Where preliminary work performed within the time limit of the lease, is carried on, and a well drilled, the intent with which the preliminary work was done cannot be attacked is unquestionable.
As to what constitutes sufficient preliminary operations, that, too, is a question of fact in each case, although the courts are prone to hold that performance of the first acts necessary to move in proper equipment for the actual drilling of the well is sufficient. An examination of the cases * * * shows that great leeway is given, where later events show good faith. One thing is certain— the courts are definite in their holding that the clause does not mean actual drilling of the well by the penetration of drill or bit into the ground.
Moses, op. cit., 583-584.
With these principles in mind, we see that although neither Empress nor its parent company, Chesapeake, obtained a drilling permit within the primary term, they performed preliminary acts. On May 4-7, *443 their surveyors tied off the section corners and gathered topographic data; on May 26-27, they finished the preliminary survey, staking the site and access road; on May 28-31, contractors logged 12 hours a day felling trees and clearing the site. Mr. Asprodites, a highly qualified expert, testified that this was not standard practice but the lease tract posed “special difficulties” requiring extensive prep work. In his professional opinion, these acts constituted “commenced operations.” Mr. Ca-son disagreed, stating that the work was In sluggish and counterproductive. From this evidence, the district court did not abuse its broad discretion in finding that Empress engaged in operations for drilling prior to the expiration of the primary term.
This court will not belabor the copious evidence of Empress’s activities onsite after May 31, 2010; in short, Chesapeake spudded the well on July 22, and by July 2011 had spent $8.5 million to bring it into operation. Despite Mr. Cason’s pejorative view of Chesapeake’s motives, this evidence amply shows that the preliminary acts were done for the purpose of completing Cason 24. The district court’s finding of good faith is no abuse of discretion. This assignment of error lacks merit.

The Pipeline in Section 13

By three assignments, the Casons urge that injunctive relief was improper because Empress had no rights in Section 13. By their 10th assignment, they contend the court erred in finding the sublease (labeled a “partial assignment”) from EnCana and SWEPI granted Empress any rights in Section 13, as the sublease was limited to the lease tract in Section 24. By their 4th assignment, they contend the court erred in finding Empress had any right to lay a pipeline in Section 13; by their 7th assignment, they reiterate that the sublease is expressly limited to Section 24.
As noted above, the Pride lease expressly granted the lessee the right to conduct operations on the lease premises “or on any adjacent or adjoining lands,” for the construction and use of “roads, canals, pipelines, tanks” and other facilities deemed necessary by the lessee to produce, store, treat, “and/or transport oil, gas and other substances.” The courts have long recognized the validity of the “adjacent lands” clause. Caskey v. Kelly Oil Co., 98-1193 (La.6/29/99), 737 So.2d 1257, 143 Oil & Gas Rep. 32, and citations therein; Blanchard v. Pan-OK Prod. Co., 32,764 (La.App. 2 Cir. 4/5/00), 755 So.2d 376, 145 Oil & Gas Rep. 262.
Pride Oil executed an act of assignment of the Pride lease in favor of EnCana in March 2007; EnCana executed an act of assignment of 50% interest in the lease in favor of SWEPI in October 2007; EnCana and SWEPI then executed an act of partial assignment of the lease to Empress in May 2009. The record also shows that the tract in Section 13 over which Empress wishes to lay this pipeline is included in the Pride lease and that Empress holds the leasehold rights to that tract by virtue of the assignments and partial assignments. In short, Empress showed its right to use the tract in Section 13 by virtue of the “adjacent lands” clause of the Pride lease.
The Mineral Code provides, “A partial assignment or partial sublease does not divide a mineral lease.” La. R.S. 31:130. Moreover, we have carefully reviewed the assignments and partial assignment, and find nothing in them that would sever the adjacent lands clause. In fact, the partial assignment, introduced in evidence as Exhibit JT-2, refers to leaseholds, rights in production, contract rights, easements and permits. The record fully supports the district court’s finding that Empress had a *444 right to lay a pipeline from Cason 24 into the Casons’ tract in Section 13. These assignments lack merit.

Standards for Preliminary Injunction

By several assignments, the Casons urge that preliminary injunction [ 13was improper because Empress failed to make the technical or evidentiary showing to support the judgment.
By their 1st assignment, the Casons contend they never interfered with Empress’s activities; they stated under oath that they would not interfere; Empress’s witnesses agreed that the Casons never denied them access to the lease tract; and Empress showed no irreparable injury. The record supports the bare allegation that the Ca-sons did not interfere with Empress’s operations in Section 24.
The thrust of Empress’s motion for in-junctive relief, however, was that the Ca-sons steadfastly refused to grant a right-of-way from Cason 24 to KinderHawk’s connector line on an adjacent tract owned by the Casons. Witnesses Evans and Stall both testified to this effect, and Mr. Cason candidly admitted that he opposed the line in Section 13. As noted above, Empress had the right to use Section 13 to lay a pipeline from Cason 24, pursuant to the adjacent lands clause. The district court did not abuse its discretion in finding that the Casons’ refusal to grant a right-of-way amounted to interference. This assignment lacks merit.
By their 9th assignment, the Casons urge the court erred in granting a preliminary injunction when there was no showing of irreparable injury. They argue that Empress failed to prove it sustained any damages that cannot be adequately compensated in money damages. By their 1st assignment, they also contend that Empress failed to show irreparable injury.
 An injunction shall be issued in cases where “irreparable injury, loss, 114or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]” La. C.C.P. art. 3601. Irreparable injury means a loss that cannot be adequately compensated in money damages, or is not susceptible to measurement by pecuniary standards. Shaw v. Hingle, 94-1579 (La.1/17/95), 648 So.2d 903; In re Succession of Scurria, 45,292 (La.App. 2 Cir. 8/25/10), 47 So.3d 620. However, this court has recognized that irreparable injury is not an element of proof for obtaining injunctive relief when an owner is seeking to protect rights in real property. Monroe Real Estate & Dev. Co. v. Sunshine Equip. Co., 35,555 (La.App. 2 Cir. 1/23/02), 805 So.2d 1200; see also Thomas v. New Orleans Redevelopment Auth., 2004-1964 (La.App. 4 Cir. 10/6/06), 942 So.2d 1163; Carbo v. City of Slidell, 2001-0170 (La.App. 1 Cir. 1/8/03), 844 So.2d 1, writ denied, 2003-0392 (La.4/25/03), 842 So.2d 400. A mineral lease is by definition a real right. La. R.S. 31:16; Hoover Tree Farm LLC v. Goodrich Petroleum Co., 46,153 (La.App. 2 Cir. 3/23/11), 63 So.3d 159. Empress asserted a real right in Section 13 based on the mineral lease. The district court expressly recognized the exception and did not abuse its discretion in finding that irreparable injury was not required. These assignments lack merit.
By their 3rd assignment, the Casons urge that the court erred in granting a preliminary injunction “that fails to maintain the status quo”; by their 4th assignment, they urge that the court upset the status quo by granting the preliminary injunction. In support, they reiterate their claim that Empress had no rights in Section 13, an argument which this court has | ^already rejected.
Further, we note that one generally recognized purpose of a preliminary injunction is to preserve the status quo during the pendency of full proceedings. *445 South Central Bell Tel. Co. v. Louisiana Public Serv. Comm’n, 555 So.2d 1370,1373 (La.1990). However, a mandatory injunction, one which requires someone to do an act, differs greatly from an injunction which merely seeks to protect the status quo. Chalmette Amusement Co. v. Alphonso, 2007-1512 (La.App. 4 Cir. 4/16/08), 983 So.2d 239. When the status quo is a condition “not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon the complainant,” a mandatory injunction is appropriate. Vicksburg, S. & P. Ry. Co. v. Webster Sand, Gravel & Const. Co., 132 La. 1051, 62 So. 140 (1913). Even though this preliminary injunction altered the status quo, it was the status quo that inflicted irreparable injury on Empress. The district court did not abuse its discretion in granting the preliminary injunction to compel the Casons to grant the right-of-way in Section 13.
These assignments of error lack merit.

Rulings on Exceptions

By their 4th assignment, the Casons urge the court erred in overruling their exception of unauthorized use of summary proceedings and improper cumulation of actions; by their 10th assignment, they urge that Empress used the wrong procedural device to enforce a (nonexistent) contractual right. They argue that the substance of Empress’s claim is a contractual and statutory obligation which is properly addressed in an ordinary proceeding |1(iby petition for declaratory judgment. Citing Citizens Organized for Sensible Taxation (C.O.S.T.) v. St. Landry Parish School Bd., 528 So.2d 1048 (La.App. 3 Cir.1988), which involved the cumulation of a mandamus action, they conclude that a summary proceeding cannot be cumulated with an ordinary proceeding.
The action for a preliminary injunction employs summary procedure; cu-mulation of actions is therefore proper. Abadie v. Cassidy, 581 So.2d 657 (La.1991); Farmer’s Seafood Co. v. State, supra. The district court did not err in hearing the preliminary injunction as a summary matter.
By their 5th assignment, the Casons urge the court erred in overruling their exception of nonjoinder under La. C.C.P. art. 641. They argue that through the various subleases, only EnCana and SWEPI own the lease, and Empress is merely a sublessee. They contend that Empress failed to join these parties in thfeir demand for injunctive relief. Citing Morgan v. Winbeau Oil & Gas Co., 45,921 (La.App. 2 Cir. 2/16/11), 57 So.3d 1202, they conclude that failure to join all assignees of mineral leases should result in dismissal.
Both EnCana and SWEPI are parties to the principal action, and the record shows that each was served with Empress’s motion for preliminary injunction. Moreover, at the hearing, counsel for EnCana and SWEPI stated on the record that they did not object to Empress’s use of Section 13 to build the pipeline. There is no showing that the rights of EnCana and SWEPI were disregarded or that a “complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.” La. C.C.P. art. 641. We perceive no error.
By their 8th assignment, the Casons urge the court erred in overruling their second exception of no cause of action. They cite La. R.S. 31:177: “A co-owner of a lessee’s interest in a mineral lease may not independently conduct operations * * * without the consent of his co-owner.” They argue that Empress failed to prove it had EnCana and SWEPI’s consent to run the pipeline into Section 13. In light of counsel’s statement noted in the preceding paragraph, this assignment lacks factual support.
These assignments of error lack merit.

*446
Evidentiary Rulings

By their 11th assignment, the Casons urge the court erred in admitting into evidence Exhibits D-16 (the Fenstermaker invoice) and D-22 (the KinderHawk gathering agreement). They contend that the witness who identified D-16, Andy Wid-mer, did not have personal knowledge of what took place on the Cason property and thus could not lay a foundation under La. C.E. art. 602. Similarly, nobody from Kin-derHawk testified to validate the gathering agreement, some 75% of which was “blacked out” to protect the parties’ confidences. The Casons argue that Empress’s failure to call any appropriate witnesses activated the “uncalled witness rule,” a presumption that their testimony would be unfavorable to Empress. Driscoll v. Stucker, 2004-0589 (La.1/19/05), 893 So.2d 32. They suggest several inferences that could be drawn from the failure to call any witness from KinderHawk, EnCana, SWEPI or Fenstermaker.
Contrary to the Casons’ claim, Widmer testified that he had been to | [Sthe well site to see that the work was being performed, worked with Fenstermaker on the project, and had personal knowledge that the work stated on the invoice was indeed done. Similarly, Carlos Evans, Chesapeake’s manager of gas sales, testified that he signed the gathering agreement and described the services that KinderHawk would perform. In both instances, the district court was entitled to find that these witnesses had sufficient personal knowledge to testify about the documents. There is simply no basis to apply the uncalled witness rule. This assignment of error lacks merit.

Damages, Costs and Attorney Fees

By their 12th assignment, the Casons urge without elaboration that because the preliminary injunction was in error, the court should have awarded them damages, costs and attorney fees as provided in La. C.C.P. art. 3608. They suggest that Empress’s injunction bond (actually filed by Chesapeake) should cover these claims.
Because we have affirmed the preliminary injunction, we find no merit to the claim that damages for wrongful issuance are due. Moreover, La. C.C.P. art. 3608 allows such damages “on a motion to dissolve or on a reconventional demand,” but the record does not show that the Casons filed either of these. Even if this court could somehow construe the appeal as a motion to dissolve or a reconventional demand, the law contemplates awarding attorney fees only to litigants who are successful on appeal. Ferrara v. Questar Exploration & Prod. Co., 46,357 (La.App. 2 Cir. 6/29/11), 70 So.3d 974, writ denied, 2011-1926 (La.11/14/11), 75 So.3d 943. The claim for damages, costs and attorney fees is denied.

Conclusion

For the reasons expressed, the judgment granting the preliminary injunction is affirmed. The cost of preparing that portion of the supplement that was responsive to this court’s order of March 16, 2012, is taxed as costs to be paid one-half by the plaintiffs, Edgar and Flora Cason, and one half by defendant, Empress Louisiana Properties. The excess cost of preparing materials not responsive to this court’s order are not taxed. All other appellate costs are to be paid by the plaintiffs.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY and MOORE, JJ.
Rehearing denied.

. In addition, Empress, Chesapeake and Fluid Disposal filed a motion for summary judgment on the issue of "commencing operations”; EnCana and SWEPI filed their own motion for summary judgment on the same issue. The Casons filed a motion for' partial summary judgment declaring that the defendants had not commenced operations. The documentary evidence to support and oppose these motions was similar to that introduced at the trial of Empress’s preliminary injunction.

. After granting the preliminary injunction, the district court granted all defendants’ motions for summary judgment and denied the Casons' motion for partial summary judgment, ruling that "Empress engaged in operations for drilling, thus maintaining the [Pride lease] entered into May 31, 2005[.]” Despite supplementation by order of this court, the record does not show that the court designated this an appealable final judgment under La. C.C.P. art. 1915 B.

. Empress also argues that this issue (and indeed the whole appeal) is moot because of the summary judgment on the "underlying issue of commencing operations,” a ruling which was not appealed. The district court, however, did not designate the summary judgment an appealable final judgment, so the Casons could conceivably contest it at the conclusion of the case. This court has therefore considered all the issues raised by the appeal.