McCALLUM, J.
Branch Properties, LLC ("Branch") appeals the trial court's denial of its motion for preliminary injunction. Branch filed for a preliminary injunction against Doctor's Point Development, LLC ("DPD"), alleging that DPD restricted or denied access to a right-of-way that it possesses via previous contracts, agreements, or through acquisitive prescription. DPD counters that although Branch does have an undisputed, forty-foot wide pipeline right-of-way, it holds no other right-of-way across DPD property. Branch filed the preliminary injunction in question with regard to an access road that crosses DPD property and leads to the undisputed pipeline right-of-way. For the following reasons, we affirm the trial court.
*575 FACTS
Branch owns and operates a subsurface pipeline that traverses DPD's property. It is undisputed that Branch has a forty-foot wide right-of-way with regard to the pipeline. Branch is the owner and operator of the right-of-way through its ancestors in title: (1) Branch's purchase of the rights from Louisiana Gas Corporation in 2015 and (2) Louisiana Gas Corporation's purchase of the rights from the O'Quin and Clark families in 1978.
The pivotal portions of the contracts and agreements in question state the following:
... the right to enter upon the land of undersigned situated in the Parish of Jackson, State of Louisiana, and more particularly described, as follows:
... to construct, lay, maintain, operate, alter, repair, remove, change the size of and replace therein pipelines, and appurtenances thereto (including without limitation all protective equipment) for the distribution or transportation of gas and to open, clear of trees and brush, and to maintain said right-of-way and to keep the same clear of underbrush, trees and other obstructions. Grantee shall also have the right to lay a second pipeline, subject line to be laid adjacent to and parallel with the first.
It is understood and agreed that the right-of-way and easement herein granted shall be forty (40') feet in width.
The grantee shall have the right of ingress and egress to and from said right-of-way herein granted for the purposes herein described.
... Grantor agrees not to construct or permit to be constructed any house, structures, or obstruction on or over said Right of Way that will interfere with the construction, maintenance or operation of said pipeline(s) or appurtenances constructed hereunder.
DPD owns the approximately 140 acres of immovable property through which the pipeline runs. However, DPD does not own the mineral rights to the property. DPD purchased the property, which was mostly timberland, with the plan of building a residential subdivision. Included within its plans for the property were utility lines, both water and electrical, that would impinge upon Branch's pipeline right-of-way. Furthermore, DPD planned to construct a road or multiple roads that would overlie the surface of the pipeline right-of-way.
DPD informed Branch of its plans for the residential community. Thereafter, on March 20, 2018, Branch filed a petition for preliminary injunction and permanent injunction. Originally, Branch filed its cause of action to prevent DPD from building any utility lines or roads across its undisputed pipeline right-of-way. Prior to the hearing, the parties stipulated that DPD could move forward with its plans to construct utility lines and roadways.
Thereafter, Branch alleged that DPD threatened Branch employees with "calling the law" if Branch proceeded to use an access road for "pigging" operations. The access road in question is a road that crosses DPD property, allegedly intersecting or ending as an access point to the forty-foot pipeline right-of-way. Branch argued that it was necessary for it to use the access road for the "pigging" of the pipeline.[1] Branch then moved forward with a preliminary injunction with regard to the access road only.
The Court held a hearing on July 19, 2018. After taking evidence and hearing testimony, the trial court took the matter under advisement, allowing the parties to *576 brief the issues. With the post-trial briefs filed, the trial court issued its reasons for judgment, denying Branch's preliminary injunction.
DISCUSSION
Louisiana Code of Civil Procedure Article 3601(A) states, "An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]" A trial court may grant a preliminary injunction where a party makes a showing of three things: (1) that the injury, loss or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he is likely to prevail on the merits of the case. See Meredith v. I Am Music, LLC. , 2018-0659 (La. App. 1 Cir. 2/13/19), 265 So.3d 1143 ; see Denta-Max v. Maxicare Louisiana, Inc. , 95-2128 (La. App. 4 Cir. 3/14/96), 671 So.2d 995. Additionally, a preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial of the issues on the merits of the case. Smith v. West Virginia Oil & Gas Co. , 373 So.2d 488, 494 (La. 1979).
Louisiana Code of Civil Procedure Article 3663 states the following:
Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right therein, is available to:
...
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.
The grant or denial of a preliminary injunction is left to the sound discretion of the trial court and will not be disturbed on appeal except for a clear abuse of that discretion. Cason v. Chesapeake Operating, Inc. , 47,084 (La. App. 2 Cir. 4/11/12), 92 So.3d 436, 441, writ denied , 2012-1290 (La. 9/28/12), 98 So.3d 840. Although the trial court may consider evidence that would later be submitted for the case on the merits so as to consider the likelihood of the petitioner proving its case for a permanent injunction, it does not actually decide the case on the merits when it grants or denies the preliminary injunction. Therefore, although the appellant has argued significantly the merits of its case, we must simply decide if the trial court clearly abused its discretion when it denied Branch a preliminary injunction.
At the hearing on the preliminary injunction, the trial court accepted and considered a generous amount of evidence prior to making its decision. The trial court heard testimony from two representatives on behalf of Branch: Bobby Stringer and Kurt Carleton[2] . The trial court also heard the testimony of the adjoining landowner, Charlie Schaeffer. Mr. Schaeffer, at the time of the hearing, had lived next to the property and access road in question for nine years. Additionally, the trial court accepted into evidence the following:
(1) The Clark and O'Quin easement agreements.
(2) The assignment and bill of sale by Louisiana Gas Corporation to Branch.
(3) A memorandum of lease between the O'Quin family and Rio Bravo Exploration & Production Company.
(4) An assignment and bill of sale between Texas Petroleum Investment Company and CML Energy, LLC.
*577 (5) A State of Louisiana Office of Conservation Order for the Hoss RA SUE alternate unit well.
(6) Numerous aerial photos of the property in question for the years 1997, 2005, 2017 and 2018.
(7) A memorandum of lease between the O'Quin family and Rio Bravo Explorations & Production Company.
(8) Well information for the area.
On August 24, 2018, the Honorable W. Peyton Cunningham, Jr., signed a five-page "Reasons for Judgment and Judgment." In his reasons, Judge Cunningham first explained that Branch had filed for injunctive relief with regard to DPD building subdivision improvements; however, the parties signed a stipulation, settling that specific matter. Thus, with that matter settled, the hearing before the trial court only concerned the access road. He further noted the abundant amount of evidence he accepted into the record for his consideration on the matter. Giving specific reasons, he denied Branch's request for a preliminary injunction.
Judge Cunningham found that Branch failed to prove that it held a recorded servitude or any right-of-way to the access road in question, that such would not likely be proven at the trial on the merits and that Branch failed to show a need for a preliminary injunction to preserve the status quo of the parties. He reasoned that the contracts and agreements, as presented, did not sufficiently prove that Branch had a right to use any property beyond the forty-foot pipeline right-of-way. He also found that Branch failed to prove any intent by DPD to interfere with Branch's ability to maintain the pipeline or access the pipeline within the forty-foot wide right-of-way. He found that no urgent or necessitous circumstance for the issuance of the preliminary injunction existed. He additionally found that granting the preliminary injunction would actually disturb the status quo since Branch failed to present adequate proof of any continuous, normal or notorious possession or use of the access road in question. He finally found, based on the evidence presented and considered for the preliminary injunction, that the agreements, mineral leases and contracts in question only granted access to the forty-foot wide pipeline right-of-way and that Branch had failed to maintain any possession otherwise when it failed to pay the annual lease amounts required by the contracts.
After considering ample evidence with regard to Branch's alleged use or nonuse of the access road in question, the trial court found that issuing a preliminary injunction would actually be inapposite to preserving the status quo of the parties. The access road in question was not maintained sufficiently to show Branch's prior, continuous use. This was corroborated by the aerial photo evidence and testimony of at least one neighbor to the property. Furthermore, at the hearing, evidence came to light that Branch has other, public road options to access the pipeline in question, and to perform the work and maintenance Branch deems necessary.
The trial court considered multiple agreements, contracts and orders with regard to the rights, easements and rights-of-way of the parties and found that Branch, within the context of a preliminary injunction hearing, was most likely only entitled to the forty-foot right-of-way. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046 ; Clovelly Oil Co., LLC v. Midstates Petroleum, Co., LLC. , 2012-2055 (La. 3/19/13), 112 So.3d 187, 192. "However, even when the language of the contract is clear, courts should refrain from construing *578 the contract in such a manner as to lead to absurd consequences." Id. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050 ; Clovelly Oil , 112 So.3d at 192.
In interpreting the contracts and agreements in question, the trial court correctly found that Branch is not entitled to a right-of-way beyond the undisputed forty-foot pipeline right-of-way. The plain language of the contract restricts such access to the forty-foot wide pipeline area. Furthermore, under the interpretation offered by Branch, the absurd consequence occurs wherein Branch would seemingly have almost unfettered access to all of DPD's property in order to merely access the pipeline. This is particularly troublesome in light of the fact, presented for the sole consideration of the preliminary injunction, that Branch has access to the pipeline via public roads and that other agreements, plat attachments and orders clearly restrict the rights of Branch to the forty-foot pipeline right-of-way.
Thus, in light of the stipulation made between the parties prior to the hearing on the preliminary injunction, the copious amount of evidence which the trial court methodically considered and the five-page, well reasoned, written ruling filed by the trial judge, we do not find the trial court to have clearly abused its discretion in denying Branch a preliminary injunction. Although the trial court may very well find that Branch is entitled to an injunction after a trial on the merits, the only matter previously before the trial court and now before us is that of a preliminary injunction. Based on the evidence at the hearing, the trial court appropriately concluded that Branch failed to make a showing that a preliminary injunction was necessary to preserve the status quo of the parties. Moreover, the court did not err in finding that Branch would not likely succeed at the trial on the merits for the permanent injunction. Finally, Branch did not sufficiently prove that an irreparable injury would occur.
The Court notes that Branch also urged an evidentiary assignment of error. Branch alleges that the trial court erred when it considered an agreement titled "Surface and Sub-Surface Agreement." DPD counters that Branch waived any objection when it stated in an email to the trial judge that the court could consider the document but that it was irrelevant to the issues before the trial court. After reviewing the record, we find that this assignment of error has no merit. In fact, Branch fails to adequately demonstrate that it otherwise carried its burden of proof. More to the point, even excluding the Surface and Sub-Surface Agreement to which Branch now objects, we still find that the evidence and testimony supports the trial court's denial of the preliminary injunction. Therefore, we affirm the trial court's judgment.
CONCLUSION
The judgment of the trial court is AFFIRMED. All costs of this appeal are assigned to the appellant.

"Pigging" is the dewatering of the pipeline, which Branch alleges is a normal, required maintenance procedure to ensure the safety of the pipeline.

Kurt Carleton is the owner and manager of Branch.