REDMANN, Chief Judge.
We granted certiorari to review the district court’s ruling of September 14, 1983, refusing to enjoin executory process under a mortgage attacked as non-authentic for failure of the subscribing witnesses to have been present at the time of the execution of the act, La.C.C. 2234. (Non-authenticity would not have prevented enforcement of the mortgage by ordinary proceedings, C.C. 2235.)
Our order suggested clear entitlement to review, because of the affirmative testimony by the person who signed the act as agent of the creditor that the act was executed in the debtor’s office outside of the presence of the witnesses, and because the notary’s testimony did not flatly contradict that testimony (although one of the notary’s employees’ testimony did), insofar as reported to us in application and response. Unfortunately, the sale had been set for September 15, the day following the trial judge’s ruling (through, perhaps, no one’s fault), and we therefore were obliged to stay the sale minutes before it was to have been made. We note, for those who may later cite this case in perhaps similar proceedings, two special circumstances leading to a stay. First, application and response did not present, as far as we could see, a simple conflict in testimony, in which case primacy must be accorded to the trial judge and we would therefore have been more hesitant about staying executory proceedings, although we would in any case consider a seasonable application for review. Second, the sale was less than two hours away when we received the application, without delay on the part of application, and we therefore did not have time to obtain the record and afford review prior to the scheduled sale.
We have now reviewed the record, and we conclude that the transcript establishes that the trial judge had to make a credibility determination between the creditor’s then agent, on the one side, and the notary and his two then employees, on the other. It may be added that the creditor’s agent later became an employee of the debtor; and that one of the notary’s employees is no longer employed by him.
One of the notary’s employees who signed as witnesses remembered this particular act. She had prepared the documents as the notarial secretary in the notary’s office, and she “was probably impressed by a residence that cost that much” (she had been a notarial secretary 30 years). She testified affirmatively that she was present at this particular act.
The second employee of the notary (no longer so employed) did not remember that particular “loan closing” or its signatories, but she testified that she knew as a legal secretary that to sign as a witness she was supposed to have seen the signatures being affixed; and that this notary had never asked her to sign as a witness except when she did see the signatures being affixed.
The notary himself testified that he did not remember the passage of this particular act; “To the best of my recollection, ... the mortgage was passed in my office because I have had a policy, a standing policy for a period of time, not to pass mortgages of any substantial size out of my office and without the witnesses present.” (This mortgage was for $1,200,000.) “I don’t recall passing any acts of mortgage outside of my office.”
The testimony of those three witnesses, believed by the trial judge, was sufficient to support his rejection of the testimony of the creditor’s former employee (now employed by the debtor), who had testified that the mortgage was passed in the debtor’s office and that the witnesses were not there. Credibility is the province of the trial judge.
The debtor’s application for writs argued also that an error in the mortgage’s description of the principal obligation it secured defeated the mortgagee’s entitlement to ex-ecutory process. This argument had been introduced by an inferior mortgagee’s intervention.
The mortgage describes the obligation as a note for $1,200,000, “payable in one hundred twenty equal, consecutive *1340 quarterly installments of $29,616.48 each ...; said installments to commence on the 29th day of November, 1979, and to continue on the 29th day of each succeeding quarter thereafter, the final installment, if not sooner paid, to be due and payable on the 29th day of August, 1979.” (Emphasis added.) The note does not contain a similar error; it rightly places the 120th quarter from 1979 in 2009 rather than 1979.
Our grant of certiorari was not based on this argument because we deem the error insignificant. The description of a note the same in every particular save that one of two definitions of the final installment date is different, when the different one is unmistakably an error (the 120th quarter after the date of the act, August 29, 1979— that is, 30 years after the August 29, 1979 act — cannot possibly be August 29, 1979) does not raise a doubt as to whether the note described and the note sought to be enforced are the same. The ultimate question, in respect to the effect of any difference in mortgage and note, is whether the authentic evidence establishes entitlement to executory process: if non-authentic evidence is required to establish that the note sued on is the debt for which judgment is confessed and mortgage given, then execu-tory process can not be had. It is not necessary here to resort to evidence beyond the act and note. Only the first and the last of the 120 quarterly installments are given dates, and (although the first might have been necessary if different from a quarter after August 29, 1979) neither date was necessary to an exact description of the debt — and especially not the last. When the last of the 120 quarters’ date is deleted because of its obviously erroneous statement (the same date as the very act and note themselves), it is not necessary to go outside of mortgage or note to have the same description of the same, fully-described debt in each.
The trial court’s ruling is affirmed and our stay order is recalled, at applicant’s cost.