Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,918-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MELODYE TANNER                                        Plaintiff-Appellee

versus

SUCCESSION OF THOMAS R.                               Defendant-Appellant
BOURLAND

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 599,854

Honorable Ramon Lafitte, Judge

* * * * *

MIRAMON LAW, INC.                                     Counsel for Appellant
By:  Jordan N. Young
     Patricia N. Miramon

DAVID L. WHITE                                        Counsel for Appellee

* * * * *

Before WILLIAMS, MOORE, and STEPHENS, JJ.

**MOORE, J.**

Patricia Miramon, executrix of the estate of Thomas Bourland, appeals a judgment that rejected her claim for a preliminary and permanent injunction to halt executory process filed by the plaintiff, Melodye Tanner, fixed the principal amount due at $162,000, and awarded Ms. Tanner an attorney fee of $15,421.50. For the reasons expressed, we affirm in part, reverse in part and remand.

## FACTUAL BACKGROUND

Tom Bourland was an independent forestry consultant who rented office space from Ms. Tanner, or from her LLC, Biotech South, in Ruston, Louisiana.[1] According to affidavits filed in the case, he was behind in his rent and other fees to Ms. Tanner. He also had a flair for hunting and travel, going on three African safaris with Ms. Tanner between 2011 and 2013 and running up a bill of over $200,000, mostly advanced by Ms. Tanner. To satisfy these obligations, Bourland executed a promissory note ("the 2014 note") in favor of Ms. Tanner for $200,000 on June 13, 2014. According to the affidavit of her lawyer, Robert Dawkins, who drafted the 2014 note, the $200,000 figure was a negotiated amount, as the parties could not agree on the exact amount owed, but it was less than the actual amount. This note was unsecured.

Between July 2014 and December 2015, Bourland wrote three checks to Ms. Tanner, for a total of $38,000. On March 10, 2016, he emailed her saying that the 2014 note was to be collected from his life insurance "in the event of my demise during our last safari," that he had reimbursed her

---

[1] At oral argument, counsel for Ms. Miramon stated that there was also a romantic relationship between Bourland and Ms. Tanner.

$38,000 for his portion of the safari costs advanced by her, and "I consider the matter closed."

Despite this email, less than two weeks later, on March 23, 2016, Bourland signed a packet of documents: (1) collateral mortgage note, to order of bearer, for $200,000, signed and notarized, and marked "ne varietur" for identification with (2) act of collateral mortgage, in favor of any future holder, for $200,000, affecting his house (Lot 17, Ellerbe Woods subdivision, Caddo Parish), signed, notarized and witnessed; (3) security agreement, listing Bourland as the debtor and Ms. Tanner as the secured party, acknowledging the act of collateral mortgage and pledging the collateral mortgage note to Ms. Tanner; and (4) acknowledgment typed on the bottom of the 2014 note, saying the principal balance due was $162,000. According to Ms. Tanner, Bourland made no more payments after this.

In June 2016, Ms. Tanner emailed Bourland's insurance agent asking to be listed as mortgage holder over the property. The agent copied this to Bourland, who emailed Ms. Tanner, on July 24, "I'm confused, since I have paid all obligations to you."

Bourland passed away in March 2017.

## PROCEDURAL HISTORY

Ms. Tanner filed this petition for executory process about one month later, April 3, 2017. She cited the documents listed above, alleged the principal and interest due was $191,061.38, plus attorney fees, and demanded a writ of seizure and sale of the property.

Ms. Miramon, Bourland's attorney and the executrix of his succession, responded with a petition for temporary restraining order ("TRO") and rule to show cause for a preliminary and permanent injunction

2

to halt the seizure and sale. She contended that Bourland had repaid everything he previously owed to Ms. Tanner; he never incurred the amount of debt alleged; and there was no proof of consideration. The district court issued the TRO and scheduled a hearing on the rule.

Ms. Tanner moved to dissolve the TRO, citing the acknowledgment that Bourland added to the 2014 note in March 2016. She also asked the court to reject all injunctive relief and award her attorney fees for having to defend these claims.

The parties agreed to submit the matter on affidavits. In early April 2018, Ms. Tanner filed seven, denying Ms. Miramon's contention that there was no consideration, asserting that by the time Bourland signed the 2014 note he actually owed her close to $230,000, and conceding that the principal balance due was $162,000.

Ms. Miramon then filed two affidavits, again asserting Bourland's March 2016 email denying that there was any balance left, and maintaining that he never told her (Ms. Miramon) about those 2016 documents, a fact that she considered "very unusual."

At a hearing in May 2018, Ms. Miramon argued that the only debt was $38,000, which Bourland had paid in full; if there was any rent claim, the proper party to claim it was Ms. Tanner's LLC, not Ms. Tanner; and the acknowledgment was not in authentic form, so it could not support executory process.[2] Ms. Tanner argued that her name, not her LLC's, appeared on every document; Bourland's acknowledgment of the debt

---

[2] She also suggested that the whole situation was suspicious, as Ms. Tanner could have sued Bourland while he was still alive, but waited until after he died.

overrode his earlier email denying it; and nobody had challenged the validity of Bourland's signature on the acknowledgment, so it was valid.

The court asked if there were any receipts for the alleged debts, and continued the case so the parties could file them.

The parties then filed counteraffidavits, with attached receipts, lists of payments, copies of checks, and printouts of emails.

## ACTION OF THE TRIAL COURT

When the hearing resumed in July 2018, the court held that the acknowledgment was an act under private signature, none of the affidavits disputed Bourland's signature, and it was therefore true and genuine under La. C.C. art. 1836. The court also found that $162,000 reflected the difference between the note and the payments.

The court later rendered judgment granting Ms. Tanner's motion to dissolve the TRO, dismissing Ms. Miramon's petition for TRO and rule to show cause for a preliminary and permanent injunction, decreeing that the principal amount due was $162,000, and awarding Ms. Tanner attorney fees of $15,421.50.

Ms. Miramon filed a timely motion for suspensive appeal, but later converted it to devolutive. Ms. Tanner filed a motion to dismiss the appeal, which this court denied by order of July 3, 2019.

## DISCUSSION

### *Motion to Dismiss Appeal*

By her motion to dismiss, Ms. Tanner showed that defenses and objections to an executory proceeding may be brought either through an injunction to arrest the seizure and sale or by a suspensive appeal. La.

4

C.C.P. art. 2642. She argued that because Ms. Miramon converted her appeal to a devolutive one, the appeal must be dismissed.

Contrary to Ms. Tanner's claim, La. C.C.P. art. 3612 B specifically provides, "An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders." Any party aggrieved by the grant or denial of a preliminary injunction is entitled to an appeal. *State ex rel. Guste v. City of New Orleans*, 363 So. 2d 678 (La. 1978); *Cush & Sons Grocery v. City of Shreveport*, 26,262 (La. App. 2 Cir. 4/7/95), 653 So. 2d 242. Given the express provision of Art. 3612, the motion to dismiss was (and remains) denied.

### *Denial of Permanent Injunction*

By her first assignment of error, Ms. Miramon urges the court committed manifest error by denying and dismissing her permanent injunction to halt the seizure and sale of the property. As noted, an injunction is the correct procedural device to raise a defense or objection against executory process. La. C.C.P. art. 2642; *General Motors Accept. Corp. v. Daniels*, 377 So. 2d 346 (La. 1979). She argues that even though the issues may overlap, *permanent injunction* requires its own trial on the merits. *Ouachita Parish Police Jury v. American Waste & Pollution Control Co.*, 606 So. 2d 1341 (La. App. 2 Cir.), *writ denied*, 609 So. 2d 234 (1992), *cert. denied*, 508 U.S. 909, 113 S. Ct. 2339 (1993). She concludes the court was plainly wrong to deny her permanent injunction on the basis of evidence

for a *preliminary injunction*, and is entitled to a full hearing on the former.[3] This argument has merit.

A preliminary injunction is a procedural device interlocutory in nature and designed to preserve the existing status pending a trial of the issues on the merits of the case. La. C.C.P. art. 3601; *Levine v. First Nat'l Bank of Commerce*, 2006-0394 (La. 12/15/06), 948 So. 2d 1051, fn. 4; *Ouachita Parish Police Jury v. American Waste*, *supra*. The principal demand, however, is determined on its merits only after a full trial under ordinary process, even though the summary proceedings for the preliminary injunction may touch on or tentatively decide issues on the merits. *Levine v. First Nat'l Bank of Commerce*, *supra*; *Ouachita Parish Police Jury v. American Waste*, *supra*. Although the trial court may consider evidence that would later be submitted for the case on the merits regarding a permanent injunction, it does not actually decide the case on the merits when it grants or denies a preliminary injunction. *Branch Props. LLC v. Doctor's Point Dev. LLC*, 52,687 (La. App. 2 Cir. 5/22/19), 273 So. 3d 573. Only when the parties have expressly agreed to submit the case for a final decision at the hearing on the rule for a preliminary injunction may the court rule on the merits at that hearing. *Ray Anding Const. Inc. v. Monroe City Sch. Bd.*, 38,228 (La. App. 2 Cir. 3/5/04), 867 So. 2d 1005, and citations therein; *Zachary Mitigation Area LLC v. Tangipahoa Parish Council*, 2016-1675 (La. App. 1 Cir. 9/21/17), 231 So. 3d 687, and citations therein.

---

[3] She also argues various technical deficiencies in the documents supporting Ms. Tanner's petition for executory process, but we will discuss these with the deficiencies alleged in the third assignment of error.

We have closely examined the record and find no express agreement or other stipulation that the parties would submit the merits of the case on the hearing for preliminary injunction. On this showing, the district court committed legal error in dismissing Ms. Miramon's permanent injunction. Although it is not apparent what additional evidence the parties might adduce at a later hearing, they are certainly entitled to introduce it for a final judgment on the merits. We therefore reverse the portion of the judgment that dismissed the petition for permanent injunction, and remand the case for further proceedings consistent with this opinion.

### *Rendition of Final Judgment*

By her second assignment of error, Ms. Miramon urges the court committed manifest error in decreeing that the amount due to Ms. Tanner by the succession is $162,000, without a full trial on the merits of the claim. She cites a number of factual issues which, ordinarily, this court would address only for manifest error. *Shane v. Parish of Jefferson*, 2014-2225 (La. 12/8/15), 209 So. 3d 726, 44 Media L. Rep. 1386; *Bagley v. Lake Bruin Landing & Marina LLC*, 51,994 (La. App. 2 Cir. 5/23/18), 248 So. 3d 613. However, because we are reversing the permanent injunction and remanding for a final hearing on the merits, we pretermit any consideration of the factual issues. Although Ms. Miramon has not suggested what kind of evidence she intends to offer to prove lack of consideration, failure of various credits, and no right of action, these are matters that may still be litigated at the subsequent hearing. This assignment of error has merit.

### *Deficiencies in Executory Process Packet*

By her third assignment of error, Ms. Miramon urges the court committed manifest error in considering an unverified acknowledgment that

7

was not self-proving for the alleged amount. She contends that each part of the executory process packet must be authentic. *Bank of St. Charles & Trust Co. v. Great Southern Coach Corp.*, 424 So. 2d 462 (La. App. 5 Cir. 1982), *writ denied*, 443 So. 2d 581 (1983); *Hibernia Nat'l Bank v. Johnson*, 438 So. 2d 1338 (La. App. 4 Cir.), *writ denied*, 443 So. 2d 581 (1983). She argues that the acknowledgment, consisting of a few lines typed on the bottom of the 2014 note, was not in authentic form and cannot support executory process. By her first assignment, she further urges that the 2014 note was not paraphed with the act of collateral mortgage and there was no hand note. These shortcomings, she argues, make the packet noncompliant with the essential elements of a collateral mortgage. *First Guaranty Bank v. Alford*, 366 So. 2d 1299 (La. 1979).

The burden of proof at a hearing for preliminary injunction is a prima facie showing that the plaintiff is entitled to relief. *Rand v. City of New Orleans*, 2017-0596 (La. 12/6/17), 235 So. 3d 1077; *Boggs & Poole Contracting Group Inc. v. Caddo-Bossier Port Comm'n*, 45,669 (La. App. 2 Cir. 11/3/10), 54 So. 3d 1126. The grant of a preliminary injunction will not be disturbed except for a clear abuse of the trial court's discretion. *Cason v. Chesapeake Oper. Inc.*, 47,084 (La. App. 2 Cir. 4/11/12), 92 So. 3d 436, 178 Oil & Gas Rep. 965, *writ denied*, 2012-1290 (La. 9/28/12), 98 So. 3d 840; Frank L. Maraist, 1A La. Civ. La. Treatise (Civ. Procedure – Special Proceedings), § 1.2 (©2005).

The statutory requirements for executory process are listed in La. C.C.P. art. 2635, which states, in pertinent part:

> A. In order for a plaintiff to prove his right to use executory process to enforce the mortgage, * * * it is necessary

8

only for the plaintiff to submit with his petition authentic evidence of:

> (1) The note, bond, or other instrument evidencing the obligation secured by the mortgage * * *.

> (2) The act of mortgage or privilege on immovable property importing a confession of judgment.

> (3) The act of mortgage or privilege on movable property importing a confession of judgment whether by authentic act or by private signature duly acknowledged.

> B. This requirement of authentic evidence is necessary only in those cases, and to the extent, provided by law. A variance between the recitals of the note and of the mortgage * * * regarding the obligation to pay attorney's fees shall not preclude the use of executory process.

Notably, Art. 2635 no longer requires that every single filing need be an "authentic act necessary to complete the proof of plaintiff's right to use executory process." This portion, the former Art. 2635(4), was deleted by 1989 La. Acts No. 137, effective September 1, 1989. Earlier cases that explicitly relied on the deleted provision, like *Bank of St. Charles & Trust Co. v. Great Southern Coach* and *Hibernia Nat'l Bank v. Johnson*, *supra*, cited by Ms. Miramon in brief, can no long be considered authority for this repealed statement of law for instruments executed after September 1, 1989. *Aetna Life Ins. Co. v. Lama Trusts*, 28,328 (La. App. 2 Cir. 5/8/96), 674 So. 2d 1086, *writ not cons.*, 96-1502 (La. 9/13/96), 679 So. 2d 100.

Instead, we have reviewed the evidence under the current law. The 2014 note was notarized and signed in front of two witnesses, making it an authentic act. La. C.C. art. 1833. The collateral mortgage note was signed, notarized, and paraphed (marked "ne varietur") with the act of collateral mortgage. The act of collateral mortgage confessed judgment. Finally, the

9

security agreement pledged the collateral mortgage note to Ms. Tanner. These documents satisfy all the requirements of Art. 2635.

Ms. Miramon correctly shows that the acknowledgment was not in authentic form. However, as noted, Art. 2635 no longer requires every portion of the executory process packet to be in authentic form. In fact, La. C.C.P. art. 2637 provides for "Evidence which need not be authentic":

> C. If a mortgage sought to be enforced is a collateral mortgage, * * * the existence of the actual indebtedness may be proved by verified original or supplemental petition, or by an affidavit submitted with the original or supplemental petition, along with the original or reproduction of the note, bond, handnote, or other evidence representing the actual indebtedness, attached as an exhibit. * * *

In short, there is no need for the hand note to be in authentic form. *Liberty Bank & Trust Co. v. Dapremont*, 2002-1504 (La. App. 4 Cir. 2/11/03), 844 So. 2d 877, *writ denied*, 2003-1416 (La. 9/26/03), 854 So. 2d 361; *Whitney Nat'l Bank v. Blueridge Inc.*, 606 So. 2d 902 (La. App. 4 Cir. 1992).

The alleged deficiencies of the executory process packet did not negate Ms. Tanner's right to use the procedure. The district court did not err in dismissing the preliminary injunction. These assignments of error lack merit.

### Attorney Fee

By her fourth assignment of error, Ms. Miramon urges the court abused its discretion in awarding the attorney fee. She concedes that the court may allow attorney fees for services rendered in connection with the dissolution of a TRO or preliminary injunction, La. C.C.P. art. 3608, but contends that on the instant record such an award is unreasonable. She submits that the mortgage itself is "questionable," a full trial is still needed

to fix the amount of the debt, and she should not have to pay the creditor's attorney for raising a valid and legitimate defense.[4]

Damages for wrongful issuance of a TRO or preliminary injunction are regulated by Art. 3608, which provides:

> The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.

Damages for the wrongful issuance of injunctive relief are within the trial court's great discretion. *Caldwell v. Griggs*, 40,838 (La. App. 2 Cir. 3/8/06), 924 So. 2d 464, and citations therein; *Alvarez v. Cressend*, 15-276 (La. App. 5 Cir. 12/23/15), 182 So. 3d 1154.

Ms. Tanner successfully dissolved the TRO, a ruling that was not appealed, and obtained dismissal of the preliminary injunction, a ruling that this court has affirmed. This satisfies the requirements of Art. 3608. While Ms. Miramon advances some potential issues, the record easily supports the dismissal of the TRO and preliminary injunction. To deny the attorney fee on the prospect that Ms. Miramon might ultimately prevail on the permanent injunction would negate the district court's discretion. We perceive no error. This assignment lacks merit.

**CONCLUSION**

For the reasons expressed, we affirm the judgment insofar as it dismissed the preliminary injunction and awarded an attorney fee for the wrongful issuance of injunctive relief. We reverse the judgment insofar as it

_____

[4] She has not contested the quantum of the fee.

11

dismissed the permanent injunction and ruled that the principal amount due was $162,000; the case is remanded for further proceedings consistent with this opinion.  Appellate costs are to be paid one-half by Patricia Miramon, executrix of the estate of Thomas Bourland, and one-half by Melodye Tanner.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**.